LIZZIE A. WEBB et vir., Respondents, v. METROPOL-ITAN STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, June 3, 1901.**

1. **Witnesses:** PHYSICIANS: PRIVILEGE WAIVED: DAMAGES. In an action for damages for personal injury, where the plaintiff goes into detail showing that he has been treated by certain doctors at certain times prior to the alleged injury for certain ailments different from the one at issue in the case, he thereby waives the privilege and such physicians become competent witnesses as to the matters and things testified to by the plaintiff; but plaintiff's testimony in relation to his affliction, when treated by a certain physician, will not render competent another physician treating him at another time for the same affliction.

2. **Damages:** PERSONAL INJURY: AGGRAVATION: INSTRUCTIONS. While an injured person should use reasonable care to prevent an aggravation of his injuries and can not recover for such as could be avoided by such care, yet, he is not required to take proper and immediate steps to prevent future consequences, but to use only reasonable care. Instructions criticised and approved.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,*
Judge.

REVERSED AND REMANDED.

*Frank Hagerman, Daniel B. Holmes* and *Willard P. Hall* for appellant.

(1) The physicians who treated Mrs. Webb were competent witnesses. She had divulged the confidential communications and thereby had waived the privilege to object to their competency to testify in relation thereto. At common law a physician is competent to testify against his patient; it is only by statute that his incompetency to do so exists. Revised Statutes 1899, sec. 4659. (2) This statute was borrowed from New York and the construction placed thereon by the courts of that State has generally received the approval of the courts of this State. Mellor v. Railroad, 105 Mo. 455; 1 Wharton on Ev. (3 Ed.), sec. 583, 584; Marx v. Railroad, 10 N. Y. Supp. 159; McKinney v. Railroad, 104 N. Y. 352; 10 N. E. Rep. 544; Treanor v. Railroad, 16 N. Y. Supp. 536; McKinney v. Railroad, 104 N. Y. 352, 10 N. E. Rep. 544; Rauh v. Deutscher Verein, 51 N. Y. Supp. 985; Lane v. Boicourt, 42 N. E. Rep. 1111; State v. Depoister, 25 Pac. Rep. 1000; Renihan v. Dennin, 103 N. Y. 580, 9 N. E. Rep. 320; Hunt v. Blackburn, 128 U. S. 464, 470. (2) Plaintiffs alleged in their petition that Mrs. Webb's condition was produced by the injuries caused by the accident. There was no allegation of an aggravation of an old disorder, and, therefore, plaintiffs were not entitled to recover anything for such aggravation. For this reason the trial court erred in refusing instruction seven asked for defendant and in modifying same. (3) The trial court erred in refusing to instruct, peremptorily, that there could be no recovery for any injuries that could have been prevented by Mrs. Webb's speedily calling in a physician.

*A. N. Adams* and *Scarritt, Griffith & Jones* for respondent.

(1) There was no waiver on the part of the plaintiff of

her right to insist upon the exclusion of incompetent testimony by reason of her testifying as to her condition of health prior to the injury. This she was bound to do under her oath to tell "the truth, the whole truth and nothing but the truth." This is no longer an open question in this State. R. S. 1899, sec. 4659; Mellor v. Railroad, 105 Mo. 460; Record v. Village, 46 Hun. 448; 53 Sup. Ct. Rep. N. Y. 448; affirmed in 120 N. Y. 646; Groll v. Tower, 85 Mo. 255; Streeter v. City, 23 Mo. App. 251; Corbett v. Railroad, 26 Mo. App. 626; Norton v. Moberly, 18 Mo. App. 459; Hope v. Way, 40 Hun. (44 N. Y. Sup. Ct.) 441; affirmed in 110 N. Y. 643; Westover v. Ins. Co., 99 N. Y. 58. (2) The court did not commit error in modifying instruction number seven, asked by the appellant. Paul v. Railroad, 82 Mo. App. 500; Owens v. Railroad, 95 Mo. 182. (3) The court did not err "in refusing to instruct peremptorily, that there could be no recovery for any injuries that could have been prevented by Mrs. Webb's speedily calling in a physician." These instructions, or similar ones, have been approved by our own Supreme Court in similar cases. Fullerton v. Fordyce, 144 Mo. 532; Hope v. Railroad, 40 Hun. 438; affirmed 110 N. Y. 643; 17 N. E. Rep. 873.

BROADDUS, J.—This is a suit by Lizzie Webb, in which her husband, Larkin Webb, joins, for damages for personal injury alleged to have been caused by the negligence of the defendant's street railway in Kansas City, Missouri. The evidence shows that the plaintiff's injury was occasioned by a collision of the car, on which she was a passenger, with another street car. The question of liability for the injury is not raised by this appeal, but it is contended that Mrs. Webb's injuries were slight and that the verdict of the jury for $1,150 was excessive. That the court erred in admitting and refusing

competent evidence to go to the jury; and that there was error in refusing certain instructions asked by defendant.

The evidence of Mrs. Webb, the plaintiff, was that she was thirty-five years of age, and she detailed the condition of her health for many years prior to her injury. She had borne five children. She stated that in 1886 she was treated by Dr. Sheley for whites or leucorrhea from the twenty-eighth of March to some time in August or September; then she was soon after treated by Dr. Fricke for pleurisy, which treatment she detailed; next she was treated by Dr. Wood for stomach trouble; and then, three years before the date of trial, she was treated by Dr. Hill for diarrhea, which treatment she also detailed. The principal injuries the plaintiff claimed to have received as the result of defendant's negligence was a miscarriage and a falling of the womb.

The evident purpose of the detailed history, by plaintiff, of her physical condition before the injury was to show that she had not had, prior to that time, *pro lapsus uteri* or falling of the womb, or a predisposition to miscarry. To contradict this testimony of the plaintiff the defendant offered as witnesses Drs. Hill, Fricke and Sheley, whose treatment of plaintiff had been detailed by plaintiff as aforesaid. The offer was to prove by Dr. Hill that his treatment of her in 1896 was to prevent an abortion; and that she was afflicted with a womb trouble; to prove by Dr. Fricke that in 1886 she was and had been for a long time afflicted with falling of the womb, and in 1889 when he quit treating her there had been no improvement; to prove by Dr. Sheley that from March to October, 1886, he treated her for falling of the womb, and that she still had it when he quit treating her. The court sustained the objection of the plaintiff to their competency. The defendant contends that this was error on the ground that inasmuch as the plaintiff by testifying to the treatment of these doctors and going

into the matter herself had thereby waived the privileges of the statute (section 4659, Revised Statutes 1899). In a number of cases in both the Supreme and Appellate Courts of this State it has been held that a physician can not testify as a witness "concerning any information which he acquired while attending in a professional character, and which information was necessary to enable him to prescribe for the patient," except when called by the patient; then he may testify. Corbett v. Railway, 26 Mo. App. 621; Streeter v. City, 23 Mo. App. 244; Norton v. Moberly, 18 Mo. App. 457; Mellor v. Railway, 105 Mo. 455; Groll v. Tower, 85 Mo. 249.

There never was any question but what a physician, as such, was prohibited from disclosing information obtained while he was treating his patients; and this prohibition, if the statute be literally construed, would exclude him from being a witness on behalf of his patient. But the courts hold that the statute must be construed in the sense as that intended by the Legislature which framed the law; and to hold that the patient was not to have the benefit of the evidence of the person who knew most about his affliction, would be absurd, and would be doing violence to the intention of the Legislature. It was, therefore, held that the patient might waive the privilege of the statute in order to obtain the benefit of the physician's evidence. And when this privilege is waived as to any particular witness, the adversary is entitled to the benefit of the waiver as to such witness, but is not entitled thereby to call another physician who had treated the patient to testify on the same subject. Mellor v. Railway, 105 Mo. 455. The precise question raised here has not been decided in this State, so far as is known to this court. In Hope v. Railroad, 40 Hun. 438 (17 N. E. Rep. 873), the same rule was laid down as in the case of Mellor v. Railway, supra.

In Marx v. Railroad, 56 Hun. 10 N. Y. Supp. 159, it

was held that the plaintiff who had testified as to what had taken place between himself and witness, his physician, waived his right to object to the latter when called; and in Fraenor v. Railroad, 16 N. Y. Supp. 536, the court went further and held that where the patient, in order to enforce his claim against a stranger, uncovers his maladies and infirmities in court, he thereby waives the privilege of the statute. This last case is in conflict with Mellor v. Railway, supra, and therefore not authority; besides, it was overruled by the Court of Appeals in Morris v. Railway, 42 N. E. Rep. 410; in which case, however, it was held, in passing upon the facts before the court, as follows: "The question here arises with respect to a single consultation between the plaintiff and the two physicians, and not to separate and distinct transactions with as many different physicians," and "there is good reason for holding that the waiver of the privilege applies to only such consultation as the witness, who is required by the patient to make the disclosure, has participated in * * *. The considerations and reasons upon which the statute was founded no longer exist where full disclosure is made by either with the consent of the patient and every party to the transaction thus disclosed, is relieved from any injunction of secrecy." The statute of the State of New York that was under consideration in said case is unlike our own, in that it provides that the patient may waive the obligation of secrecy, without, however, specifying any particular manner for so doing. But inasmuch as our courts have held that the patient may waive the injunction of secrecy, the force and effect of one is about equal to that of the other. In this State the right to waive the injunction of secrecy is now well established, but in what manner, if more than one, has not yet been decided.

If the waiver is to be restricted to instances only where

the patient calls a particular physician or surgeon as a witness, it seems to us that the statute might be made the instrument of great injustice. We agree that the ruling in Mellor v. Railway, supra, is sound and to be followed, but that case is not inconsistent with Morris v. Railway, supra. The distinction between the two is broad. Judge THOMAS, who delivered the opinion of the court in the Mellor case, said:

"We incline to the opinion that plaintiff, by calling Dr. Glancie to testify in his behalf, merely waived his incompetency for the purposes of the case, but can not thereby be justly deemed to have assented to the examination of every other witness pronounced incompetent by the statute who might possess confidential knowledge on the same general subject." In Morris v. Railway, ante, there were two physicians at one and the same consultation. One was called by the patient to testify and the court held as to that particular consultation, the waiver as to one of the physicians was a waiver as to both. In the case at bar, the plaintiff testified to the treatment of the doctors named (whose testimony was offered and excluded), and what they treated her for. Did she by so doing virtually open the door of the sick-room and remove the shield of the statute which imposed secrecy upon her physician? Was it right to permit the plaintiff to state that Dr. Fricke treated her for leucorrhea, inferentially that she did not have falling of the womb, and when it is proposed to call Dr. Fricke to rebut the inference that he did not treat her for leucorrhea, but for falling of the womb, to allow her to invoke the shield of the statute? It was deemed necessary for plaintiff to show to the jury that she did not have falling of the womb or a predisposition to miscarry before the injury, and for that purpose she was permitted to state at what different times, prior thereto, she had been sick and how and for what disease each doctor treated her. In other words, she was telling what the doctors,

in effect, said was the matter with her, and inferentially what was not. She had the benefit of really what they said to her as well as what they did for her, *as she understood them,* by her disclosures to the court and jury. She voluntarily lifted the veil of secresy by going on the stand and testifying to the different treatments of the different doctors. She was allowed to fortify her case in this way by the silent testimony of those whose acts and words (indirectly) she invoked, but whose mouths she closed by the shield of the statute. If such be the law, it can be made destructive to the rights of third parties. There would be no safety against its evil tendencies in the hands of unscrupulous persons. That which was intended by the Legislature to hide, as with a veil, the secret and sacred confidences of the sick room, should not be used as a snare for the judge and jury. There was a want of candor and fairness in such a course that at once challenges the sense of justice. It is a game of hide and seek, to be played by one side alone, to the utter helplessness and confusion of the other side. A sense of judicial responsibility forbids us giving our consent to a rule of law that, on its face, is so unfair and so unjust. He who invokes the statute must do so with the full and unqualified understanding that it is a shield to him and not a sword for others. That its beneficent object is to protect him in his rights and not to impair those of his adversary. We hold that the physicians, whose evidence was offered, were competent witnesses under the facts. But we do not hold that when the patient divulges what occurred between himself and a certain physician who treated him for disease, that that would authorize the other side to call another physician who might have treated him at another and different time for the same disease.

The defendant, among other instructions, asked the court to give the following:

"It was the duty of the plaintiff to at once secure a phy-

sician and follow his direction.   If she failed to do either of these things, then for any injury by reason thereof she can under no circumstances claim damages from the defendant."

In Fullerton v. Fordyce, 144 Mo. loc. cit. 533, the Supreme Court condemns an instruction of similar import. The language used by the judge who delivered the opinion is as follows:   "An injured person should use reasonable care to prevent an aggravation of his injuries and will not be allowed to recover compensation for such as could have been avoided by the exercise of such care and prudence."   And further:   "But to require one who has been injured to take proper and immediate steps to prevent future consequences, is demanding of him a degree of care and an infallibility of judgment which the most skillful physician does not possess.   The law requires nothing unreasonable."

Instruction number twelve, also refused, embodies the same idea in a more elaborate form and was properly refused.

It is true that plaintiff had a miscarriage the day of the injury and did not call a doctor for about ten days, although she was seemingly in bad condition, yet it appears she took medicine and thought she could get along without a doctor in the meantime.   Under this state of facts, the court very properly, in instruction number two, submitted the question to the jury; said instruction being as follows:

"The court instructs the jury that if you believe from the evidence that the plaintiff's injuries complained of, if any there were, were aggravated or her recovery therefrom retarded by any unreasonable delay on her part to secure the services of a physician, then you should consider this fact, if you find for the plaintiff; in mitigation of damages and not allow her any damages for an aggravation of said injuries arising from such delay."

As the case is to be retried, it is not necessary to pass

upon the other questions raised by appellant.

For the reasons given the cause is reversed and remanded. All concur.