SAMUEL EPSTEIN, Respondent, v. PENNSYL-
VANIA RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, November 2, 1909.

1. DAMAGES: Impotency: Evidence. In an action for personal injuries, testimony by plaintiff that before his injury he was able to have intercourse with his wife and since that time had not been was sufficient to warrant the submission of that element of damages to the jury.

2. ————: Personal Injuries: Proximate Cause. In an action for personal injuries, it must appear the accident directly caused the injury complained of to warrant a recovery.

3. ————: ————: ————: **Evidence Held Sufficient: Question for Jury.** Where plaintiff testified that before his injury he was a perfect man in every respect, and that since his injury he had been impotent, and where there was no pretense of any intervening or intermediate fact to which the change in his condition could be attributed, the jury had a right to form their own conclusion as to whether or not plaintiff's condition was directly caused by the accident.

4. **WITNESSES: Damages: Impotency: Plaintiff Competent Witness to Establish.** In an action for personal injuries, plaintiff was a competent witness to prove impotency, by testifying he had been unable to have intercourse with his wife since the accident.

5. **EVIDENCE: Physicians: Plaintiff's Condition: Materiality.** In an action for personal injuries, evidence of two doctors, who had assisted in treating plaintiff at a hospital, which bore directly on the condition, symptoms and acts of plaintiff while there, and as to the conclusions they arrived at from an inspection of, and conversations with, plaintiff was material and relevant.

6. ————: ————: ————: **Cumulative.** Such evidence should not have been excluded as merely cumulative, since a party has a right to have all the witnesses heard who have knowledge of the facts and circumstances bearing on the case.

7. **WITNESSES: Physicians: Privileged Communications: Waiver.** Although the patient fails to invoke his privilege as to his principal physician testifying to a privileged communication between them, and himself testifies concerning his injuries and treatment, he does not thereby waive his right to object, under Section 4659, Revised Statutes 1899, to the testimony of a physician who was an assistant to the principal physician in the treatment of his injuries.

8. **DEPOSITIONS: Trial Practice: Objections at Trial not Made When Deposition was Taken.** Evidence in a deposition may be excluded at the trial, under Section 2908, Revised Statutes 1899, although no objection thereto was made at the time the deposition was being taken.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Everett W. Pattison* for appellant.

(1)   The trial court erred in refusing the following instruction asked by the defendant, to-wit: Plaintiff alleges in his petition that one result of his injuries is that he has become sexually impotent.  You are instructed that there is no evidence that his impotence, even if you find it to exist, was caused by the injuries received in his accident, and in making up your verdict you will not take into consideration this alleged impotency.   The only testimony bearing on the question was that of plaintiff himself.   No testimony was offered by the plaintiff, expert or otherwise, to connect impotency with the accident, though he put four physicians on the stand who testified in his behalf, one of them being his family physician.   Bent v. Lewis, 88 Mo. 462; Shields v. Hobart, 172 Mo. 491; Robinson v. Insurance Co., 144 Fed. 1005.   The mere concurrence of the impotency with the accident is not sufficient to warrant the submission to the jury of the question whether the former was the result of the latter.  Smillie v. Dollar Store, 47 Mo. App. 402; De Maet v. Storage Co., 121 Mo. App. 92; Holman v. Railroad, 62 Mo. 562; Spiro v. Transit Co., 102 Mo. App. 250; 21 Am. and Eng. Ency. of Law (2 Ed.), p. 516; Railroad v. Petersen, 86 Ill. App. 375; Crane Company v. Stammers, 83 Ill. App. 329; Dobbins v. Brown, 119 N. Y. 188; Searles v. Railway, 101 N. Y. 661; Rupper v. Railroad, 154 N. Y. 90.; Railroad v. Aderhold, 58 Kan. 293; Gilpin v. Railroad, 197 Mo. 319.   It is proper for the court by instruction to take from the jury any particular issue as to which there is no legal evidence. Barrie v. Transit Co., 102 Mo. App. 87; Tibbe v. Kamp, 154 Mo. 545; Borden v. The Falk Company, 97 Mo. App. 566; Ryan v. Kelly, 9 Mo. App. 592; Holman v. Railroad, 62 Mo. 562; Smart v. Kansas City, 91 Mo. App. 586; Higgins v. Railroad, 197 Mo. 300.   Such an instruction is not a comment on the evidence.   Stew-

art v. Sparkman, 75 Mo. App. 106. (2) The court below erred in refusing defendant's instruction marked B. See authorities under points I and IV. (3) The court erred in giving plaintiff's fourth instruction— that as to the measure of damages. While it is somewhat difficult to understand what is meant by the phrase "impotency to his sexual organs," yet it is clear that the jury might have supposed, and doubtless did suppose, that, in the opinion of the court, there was evidence before them tending to prove that plaintiff was impotent and that this impotency was directly caused by the accident, and that they were at liberty to allow him damages therefor. That there was no such evidence we have shown. And the giving of this instruction only emphasizes, and makes more prejudicial, the error in refusing defendant's instructions B and C. See authorities cited under point I. There was certainly no evidence to support the last clause of the above instruction, viz., "and directly caused thereby." (4) The court below erred in admitting the testimony of plaintiff as to non-intercourse with his wife. 3 Am. and Eng. Ency. of Law (2 Ed.), p. 878; Denison v. Page, 29 Pa. St. 420, 72 Am. Dec. 644; Tioga County v. South Creek Township, 75 Pa. St. 433; Shuman v. Shuman, 83 Wis. 250; Mink v. State, 60 Wis. 583, 50 Am. Rep. 386; Bell v. Oklahoma, 8 Okla. 75; Chamberlain v. People, 23 N. Y. 85, 80 Am. Dec. 255; Egbert v. Greenwalt, 44 Mich. 245, 38 Am. Rep. 260; Boykin v. Boykin, 70 N. C. 262, 16 Am. Rep. 776; Scanlon v. Walshe, 81 M'd. 118; Bowles v. Bingham, 2 Munf. (Va.) 442, 5 Am. Dec. 497; Corson v. Corson, 44 N. H. 587; Legge v. Edmonds, 25 L. J. Ch. (N. S.) 125. (5) Under the evidence, which seems to establish the fact that Drs. Fry and Graves could not give an opinion as to plaintiff's nervous disease, without relying more or less upon the statements the plaintiff made to them, it was error to allow these two physicians to give their opinion as to the nervous condition

of plaintiff. Both physicians testified that they asked the plaintiff as to the history of the case. Holloway v. Kansas City, 184 Mo. 19; Mach. Co. v. Crowley, 115 Ill. App. 540; Railroad v. Donworth, 203 Ill. 192; Railroad v. Carr, 170 Ill. 478. (6) The court below erred in excluding the testimony of the two physicians who assisted Dr. Elston in examining plaintiff and dressing his injuries at Corry Hospital. The plaintiff testified as to what took place at the hospital, going fully into the details. Dr. Phelps and Dr. Christie were present assisting Dr. Elston. The court permitted Dr. Elston to testify, but rejected the testimony of the assisting physicians. When plaintiff removed the seal of secrecy as to the events which occurred at the hospital, he waived his privilege not only as to Dr. Elston, but also as to the other physicians who were present assisting him. Webb v. Railroad, 89 Mo. App. 604; Highbill v. Railroad, 93 Mo. App. 219; Morris v. Railroad, 148 N. Y. 88, 51 Am. St. Rep. 675; Treanor v. Railroad, 16 N. Y. Supp. 536; Marx v. Railroad, 10 N. Y. Supp. 159; People v. Schuyler, 106 N. Y. 298; Lane v. Boicourt, 128 Ind. 420, 25 Am. St. Rep. 442. (7) The court below erred in excluding evidence of certain statements made by a physician to the plaintiff as to the extent of his injuries. No proper objection was made to the evidence. The tendency of the evidence was to show that statements were made to the plaintiff by a physician, the natural effect of which would be to remove and allay his apprehensions, and thus to terminate the fright under which he asserted he was laboring. Appellant insists that the exclusion of this evidence was prejudicial error.

*Jesse A. Wolfort* and *S. P. Bond* for respondent.

(1) The court did not err in permitting the respondent to testify as to his sexual impotency resulting from his injuries. Railroad v. Harris, 122 U. S.

597; Railroad v. Ward, 135 Ill. 511. (2) The above authorities in point 1 of respondent's brief, dispose of points 1, 2, 3 and 4 of appellant's brief. In point 4 of appellant's brief its counsel has gone to the American and English Encyclopedia of Law, volume 3, second edition, page 878; and under the article on "Bastardy" cites a number of cases. We mention this for the reason that the court will at once see that the citations are wholly foreign to the case before the court. The cases hold that it is against public policy for the parents to bastardize their own children during wedlock. We will discuss this further on in our brief. (3) Respondent's own testimony and that of Dr. McCandless, appellant's witness, tended to show that the injuries, nervous disease and fright consequent to the wreck produced the impotence of which respondent complains. (4) And if we leave out the testimony of Dr. McCandless the testimony of Epstein is ample to sustain the position of impotency because it was for the jury to draw natural conclusions, not for the doctor to do so. Glasgow v. Railroad, 191 Mo. 347. (5) It was competent for Drs. Fry and Graves to give their opinions of the respondent's nervous condition, based upon their physical examination of respondent, as they testified that they could and were giving their testimony upon their physical examination, stripped of anything which respondent said to them. Holloway v. Kansas City, 184 Mo. 19, 30. Because of Dr. Schwab testifying that he was basing his opinion on what the patient said and what he learned by his own examination, the court, upon objection of counsel for appellant, refused to let him answer and he was withdrawn by the respondent. (6) The court below did not err in excluding the depositions of Drs. Phelp and Christie. In fact no part of Dr. Christie's deposition was offered by the appellant as the additional transcript of the record shows and the part offered of Dr. Phelps' was properly excluded. The court did not err for the reasons: First. Because

counsel for the appellant did not state to the court at the time what he intended to prove by the witnesses or either of them. Ruschenberg v. Railroad, 161 Mo. 70. Second. Because anything that the witnesses Drs. Phelps and Christie learned concerning the respondent was by virtue of being his physicians, and hence privileged, as was the testimony of Dr. Elston. Gartside v. Ins. Co., 76 Mo. 446; Groll v. Tower, 85 Mo. 249; Carrington v. St. Louis, 89 Mo. 208; Thompson v. Ish, 99 Mo. 160; Morton v. Moberly, 18 Mo. App. 457; Streeter v. Breckinridge, 23 Mo. App. 244; Corbett v. Railway, 26 Mo. App. 621; King v. Kansas City, 27 Mo. App. 231; Weitz v. Railway, 33 Mo. App. 39; Evans v. Trenton, 112 Mo. 390; Miller v. Railway, 105 Mo. 455; Haworth v. Railway, 94 Mo. App. 215; State v. Kennedy, 177 Mo. 98; James v. Kansas City, 82 Mo. App. 20; Glasgow v. Railroad, 191 Mo. 347. Third. Because if it were for the purpose of impeaching appellant's witnesses, Edward Walters, John M. Andrews and R. J. Malone, as to their testimony concerning respondent being sick and complaining of injury to his stomach or for the purpose of impeaching the testimony of Miss Ida Falconer concerning the sprain to respondent's ankle, it is estopped for the reason that it could not impeach its own witnesses. Clafflin v. Dodson, 111 Mo. 195; Brown v. Wood, 19 Mo. 475. Fourth. At best the testimony as set out in the depositions of Drs. Phelps and Christie would only be cumulative testimony. (7) Even in a case of newly discovered evidence, if the appellate court is not satisfied that a new trial would result in a different verdict, it will not set the verdict aside. Cropper v. Mexico, 62 Mo. App. 385. (8) The number of witnesses that shall be heard on a single point is a matter resting in the discretion of the court and a judgment will not be reversed in a civil action, because of the refusal to admit competent evidence which is merely cumulative. Clark v. Finn, 12 Mo. App. 583; Morgan v. Wood, 38 Mo. App. 255; Stilwell v. Patton, 108 Mo.

343; Kesee v. Railroad, 30 Iowa 78; Bays v. Herring, 51 Iowa 286. (9) The appellant complains in its point III that the court erred in giving the following part of respondent's instruction on the question of damages: "4th. The impotency to his sexual organs, if any, which he has suffered from said injuries and directly caused thereby." Appellant says: "There was certainly no evidence to support the last clause of the above instruction, viz.: 'and directly caused thereby.' There is no merit in this complaint. Cobb v. Railroad, 149 Mo. 135; McCarty v. Transit Co., 108 Mo. App. 317. (10) When the verdict is for the right person the appellate court will not reverse judgment unless error was committed materially affecting merits of action. Peterson v. Transit Co., 199 Mo. 331. (11) It is proper to make objections at the trial, to the competency, relevancy, etc., of any question or answer of a witness whose testimony is taken in the way of a deposition. R. S. 1899, sec. 2908.

STATEMENT.—This is an action for personal injuries alleged to have been incurred by plaintiff, respondent here, in a wreck on defendant's railroad, on the night of January 6, 1906. Adopting the statement of counsel for appellant, "the only question raised at the trial was as to the extent of the injuries resulting to plaintiff." Without stating them with very great particularity, it is sufficient to say that it is charged in the petition, that plaintiff was caught and pinioned in the wreckage of the train upon which he was a passenger, his ankle sprained, his leg, knee and person, stomach and liver, wounded, crushed, bruised, cut, contused, externally and internally, and he was greatly and permanently injured and has been confined to his bed and house by reason thereof for a long time, has been prevented from attending to his business as a wholesale dry goods, merchandise and notions dealer, to his great loss and damage; that he was and has been and will be

unable to give his ordinary and usual time, care and diligence to his business, prevented from work, labor and services, thereby greatly impairing his earning capacity; that he has been and will be compelled to procure medical attention, medicines, nursing, nurse hire and expenses for them and for physicians, which expense he sets out in detail, averring that these services were, now are and will continue to be necessary for an indefinite period. "That by reason of such great injuries and the horror of said wreck, his nervous system was caused to collapse, and his sexual powers to become impotent, and he has been, and will in the future be, by reason of said injuries and nervous shock, permanently injured, has suffered, and will in the future suffer, great mental pain and bodily anguish." Judgment is demanded in the sum of $30,000.

The answer was a general denial, contributory negligence, want of due care, inattention to his injuries after they had been received, want of knowledge or information sufficient to enable defendant to form a belief as to whether or not plaintiff was permanently injured, but that if he did receive permanent injuries at that time and place, they were due to his own negligence and carelessness.

A great amount of testimony was introduced at the trial by the respective parties. Plaintiff testified to the accident and nature and extent of his injuries, his testimony tending to prove them as set out in his petition. In the course of his direct examination this appears:

"Q. Before you were injured were you able to have intercourse with your wife?

Mr. Pattison: "I object to going into that question for two reasons: In the first place, it either requires expert testimony to support that charge of the petition, or else there must be testimony of non-access. I say, under the uniform, unbroken current of decisions, this witness cannot testify as to non-access, and this witness

has not qualified as an expert.  I object to the question as incompetent."

The objection was overruled, to which ruling of the court defendant, by counsel, then and there duly excepted.

"A.   Yes, sir.

Mr. Bond:  "Since your injury have you been able at any time to have intercourse with your wife?

Mr. Pattison:  "I object to the question on the same grounds."

The objection was overruled, to which ruling of the court defendant, by counsel, then and there duly excepted.

"A.   No, sir."

Plaintiff further testified that before his injury his physical condition was "all good," had never been sick in his life.  There was no other testimony in the case on this particular point of impotency, either by plaintiff or any other witness, nor did any of the physicians who were examined in the case testify in reference to it, except that one physician, called as a witness by defendant, testified that he had made an examination of the plaintiff's person and found no indication of any disease or injury to his private parts and no abnormality.  Asked, on cross-examination, whether or not a man who had been in a railroad wreck and suffered shock under the circumstances attending the wreck which were detailed to him, and who had been injured and laid up for a long time, would be apt to be affected in his sexual organs, he answered that he did not think so, did not think that that would necessarily follow, and did not think that such result would come from these injuries or from this shock; that he might be more or less shocked from fright.  On re-direct examination, this witness testified that he was not a neurologist.  Counsel for plaintiff then calling his attention to the fact that he had been asked some questions about the possibility of the fright such as plaintiff had spoken of,

affecting the size, etc., of the genital organs, asked him what he would say about it as to whether he (the physician) knew anything about that and whether that came in the line of his practice, to which he answered, "No, I think I would not have anything to say about that. I do not know." All he does know, he testified, is that he found the organs in a normal condition.

It also appeared in evidence that when plaintiff was first injured, he was taken to a hospital and there attended by a Dr. Elston. Dr. Elston was called as a witness by the defendant and he testified as to the condition in which he found plaintiff at the hospital and to what had taken place there during his examination of the plaintiff, and also testified that he had with him at the time two assistants, Dr. Phelps and Dr. Christie. Plaintiff himself had testified to his treatment in the hospital and that when he was treated by Dr. Elston, the other two doctors were also there.

At the trial counsel for defendant stated that he desired to ask the court to pass upon the question whether or not the two physicians who assisted Dr. Elston in the hospital and whose depositions had been taken and were on file are competent witnesses to testify as to what they saw, and he offered their depositions, which are in the record and are statements of the observations of these two physicians and surgeons as to the nature of the injuries and their extent and probable duration. Counsel for plaintiff objected to their depositions being read, on the ground that these two surgeons were assistants of Dr. Elston and that they and Dr. Elston were plaintiff's physicians and that whatever took place between him and them was a privileged communication. The court sustained the objection and excluded the depositions, defendant duly excepting.

The deposition of a witness named Andrews, taken on behalf of defendant, was read in evidence. In that

143 App—10

deposition Andrews was asked by counsel for defendant this question: "You didn't observe the injuries he complained of, did you?" To which he answered, "The physicians were there; they examined him and said there were no bones broken." This answer was objected to at the trial by counsel for plaintiff, objection sustained and the answer excluded, defendant duly excepting. On this witness being re-examined, as appears by the deposition, he said, in answer to a question, that his impression was that the physician told Epstein, the plaintiff, that there were no bones broken. This was objected to, the objection sustained and the answer excluded.

At the instance of plaintiff, the court gave several instructions, and while defendant excepted to the giving of all of the instructions, the particular instruction now objected to in the brief and argument submitted to us, and the only one now objected to, is that part of the instruction covering the measure of damages, and occuring in the fourth instruction given at the instance of plaintiff. After instructing that the jury was entitled to assess his damages in such sum as will reasonably compensate him for whatever injuries complained of by plaintiff in his petition the jury believed from the evidence he has sustained, if any, the court, after defining what reasonable expenses could be included and that pain of body and mind, peril and fright, if any, could be taken into consideration and that nervous shock, if any, directly caused by the injury could be taken into consideration, instructed that the jury might also consider, in estimating damages, "the impotency to his sexual organs, if any, which he has suffered from such injuries and directly caused thereby."

On the part of the defendant, the court instructed the jury that it was for plaintiff to prove the injuries which he claimed he had suffered from the accident and that he is entitled to recover for only such injuries as set forth in the instructions herein as it appears from

the preponderance of the evidence that he has suffered. The jury were further instructed, at the instance of defendant, that the evidence submitted in the trial as to plaintiff's inability to attend to business is to be considered only so far as it tends to prove that plaintiff was suffering physically and mentally as the result of the accident; that the jury are not to take into consideration, as tending to prove damages, any loss arising from plaintiff's past or present inability to attend to business, and the jury, in assessing damages, were not to take into consideration any loss of time since the accident and up to the time of the trial during said period to attend to business, "since these do not under the pleadings and evidence in this case constitute any element of damage for which plaintiff is entitled to recover." The third instruction given at the instance of the defendant, was to the effect that the opinions of the physicians who have testified in the case are merely advisory and not binding on the jury, and that the jury would give them such weight as they believed from all the facts and circumstances in evidence they are entitled to receive, and are at liberty to disregard all or any part of their opinions which appear to the jury to be unreasonable. The fourth instruction told the jury that they would not be warranted in giving plaintiff any damages for future or permanent injuries, unless there is such a degree of probability that the injuries would be permanent or at least continue in the future, as amounts to a reasonable certainty that the result will follow from plaintiff's original injury. By the fifth instruction the jury were told that plaintiff was not entitled to recover for any trouble with his stomach which he did not have before the accident, unless they believed from the evidence that that trouble is the result of the wounding, etc., of his stomach, "and from that cause alone he is entitled to recover for stomach trouble, if any, caused by nervous affection, whether or not you believe such nervous affection to be the result of the

accident." The defendant also asked three instructions, marked A, B, and C, which the court refused. Instruction A was to the effect that if the jury believed from the evidence that plaintiff's injuries were not properly treated at the hospital and that the result of his injuries were on that account aggravated, the jury were not to take into consideration the circumstances of the improper treatment, if it was found to be improper, and that plaintiff was not entitled to recover any damages whatever for or on account of such improper treatment or aggravation. Instructions B and C, which were asked by defendant and refused, are as follows:

"B. Plaintiff alleges in his petition that one result of his injuries is that he has become sexually impotent. You are instructed that there is no evidence in support of this allegation, and in making up your verdict you will not take it into consideration.

"C. Plaintiff alleges in his petition that one result of his injuries is that he has become sexually impotent. You are instructed that there is no evidence that his impotence, even if you find it to exist, was caused by the injuries received in his accident, and in making up your verdict you will not take into consideration this alleged impotency."

Exception was duly saved to the refusal of these instructions. The jury returned a verdict in favor of plaintiff for $4000, nine of the members of the jury concurring. A motion for new trial was duly filed and overruled, exception saved, and an appeal duly taken to this court by the defendant.

REYNOLDS, P. J. (after stating the facts).—In the presentation of this case to this court the learned counsel for the appellant, in a very exhaustive brief and argument, makes seven points against the action of the trial court. The first, second and third points relate to the refusal of the court to give the instruc-

tions marked, "Defendant's instructions B and C," and in giving the fourth paragraph of the instruction covering the measure of damage, that is to say, the paragraph based on the impotency of plaintiff. The fourth point of error assigned is to the admission of the testimony of plaintiff as to his non-intercourse with his wife. The fifth point alleges error to allow two of the physicians to give their opinions as to the nervous condition of plaintiff, it being claimed that it was in evidence that these physicians could not give such an opinion without relying more or less upon the statements plaintiff made to them. The sixth error assigned is to the action of the court in excluding the testimony of the two physicians whose depositions were offered, and the seventh error assigned is to the action of the court in excluding the testimony of the witness which we have quoted, as to statements made by a physician to the plaintiff, in the presence and hearing of the witness, as to the extent of the plaintiff's injuries.

Taking up these propositions in the order made, we dispose of the first one by saying that we do not consider it well taken. We have set out the testimony of the plaintiff himself bearing on the fact of impotency. On that testimony the conclusion of alleged impotency must rest. It is true, there was testimony of a physician called as a witness by the defendant, and which we have set out in the statement, to the effect that, in his opinion, impotency was not a necessary result of the accident to plaintiff. But that physician, on redirect examination by counsel for defendant, testified that he did not consider himself competent to answer or to pass upon that fact. Even if this witness had not almost entirely destroyed the probative force of his testimony by this very frank admission, the fact of whether impotency had been proven was one for the determination of the jury, who were the judges of the weight to be given to the testimony concerning it. The jury had before it the declaration of this plaintiff as to

Epstein v. Railroad.

non-intercourse, and counsel for appellant argue and present this case on the theory that testimony of non-intercourse is evidence of impotency. His argument is that impotency is sought to be proven by the fact of non-intercourse, and that plaintiff, as husband, is disqualified from testifying as to the fact of non-intercourse, and as he is not shown to be an expert, he cannot testify as an expert. These are substantially his objections, made to the question as to non-intercourse when that question was asked plaintiff at the trial, and it is on these objections that his brief and argument before us rests. There was no contradiction of this bald and plain statement of a fact by plaintiff. The jury saw and heard the plaintiff and it was within their province to determine, on his testimony, whether the fact existed. The learned counsel for the appellant, however, very strenuously argues, that the court, in inserting in the instruction which it did give on this subject, the words "and directly caused thereby," was instructing without evidence on which to base this clause, contending that there was no evidence whatever in the case to show that the impotency complained of or injury to the organs was directly caused by the accident. Counsel presents a vast array of authorities in support of his position that it must appear that the accident directly caused the injury complained of. There is no doubt whatever that this is as thoroughly settled as any legal proposition can be said to be settled. The assumption, however, upon which the argument rests is erroneous. The testimony of plaintiff himself was that before this wreck, he was a perfect man in all respects; his testimony tended to prove that after that he had become impotent. The fact of the accident was beyond question. He was injured in the wreck. There is no pretense of any intervening or intermediate fact to which the change in his condition can be attributed. On these facts the jury had a right, as sensible men, as men of even ordinary intelligence, to form their own conclu-

sions as to whether or not the alleged result was direct-
ly caused by the accident. Even assuming that the tes-
timony of the physician, in the face of his own declara-
tion of non-expertness on such matters, is to be taken
as the testimony of an expert that impotency does not
follow such injuries as were testified to as having been
received by plaintiff, and assuming, which was not true
in this case, that witnesses of established reputation
as experts on this branch of pathology had testified
that impotency could not arise from or be directly
caused by such injuries or from such an accident, we
have in this case the express declaration of the court,
given at the instance of defendant's counsel himself in
his third instruction: "You are instructed that the
opinions of the physicians who have testified in this
case are merely advisory, and not binding on you. You
should accord to them such weight as you believe, from
all the facts and circumstances in evidence, they are
entitled to receive, and you are at liberty to disregard
all or any part of their opinions which appear to you
to be unreasonable." So that under this, the jury has
the undoubted right to determine as between the testi-
mony of plaintiff and the theoretical, somewhat mythi-
cal, testimony of experts. Our conclusion is that there
was no error in giving this part of the instruction and
in including impotency as an element of damage and it
follows that there was no error in refusing instructions
B and C asked by defendant, unless it is true that the
fact of non-intercourse, on which the presumption of
impotency rests, cannot be proven by the testimony of
the husband, he not being an expert, nor qualified as
such, and being incompetent, as husband, from testify-
ing to the fact of non-intercourse. Counsel for appel-
lant has cited in support of his contention that error
was committed in allowing plaintiff to testify as to
non-intercourse, Am. and Eng. Ency. of Law (2 Ed.),
vol. 3, p. 878, as also Dennison v. Page, 29 Pa. St. 420;
Tioga County v. South Creek Township, 75 Pa. St. 433;

Shuman v. Shuman, 83 Wis. 250; Mink v. State, 60 Wis. 583; Bell v. Oklahoma, 8 Okla. 75; Chamberlain v. People, 23 N. Y. 85; Egbert v. Greenwalt, 44 Mich. 245; Boykin v. Boykin, 70 N. C. 262; Scanlon v. Walshe et al., 81 Md. 118; Bowles v. Bingham, 2 Munf. (Va.), 442; Corson v. Corson, 44 N. H. 587; Legge v. Edmonds, 25 L. J. Ch. (N. S.) 125. Referring to the encyclopedia on the page given by counsel, it will be found that the text relied upon is under the title, "Bastardy." Most, if not all, of the cases which he cites, are cases of bastardy or cases between the husband and wife, in which it was held, as it undoubtedly has been held in like cases in our State, not only by decision, but by statute, in all cases where the question of competency of the witness is concerned, that the husband in such cases is not a competent witness as to transactions between himself and his wife. It is the shield thrown by the law around the relation of husband and wife, and in the cases referred to by counsel it was invoked either where the husband was suing the wife or *vice versa,* or in cases of bastardy, or where the question of the legitimacy of the children was in issue. On a careful examination of every one of these cases, we have come to the conclusion that they do not meet the issue and do not sustain the proposition made in this case by counsel.

In Corson v. Corson, supra, cited by appellant, the ruling of the court, that the husband is not a competent witness to prove want of access, is distinctly limited to proof of want of access in a proceeding in a libel for divorce, although it is true that in that case authority is cited for the position that non-access cannot be proved by either husband or wife in any cause. This is followed, however, by the limitation, "whether to recover property as heir at law or in a bastardy or settlement case." It would seem, therefore, that in all the cases in which this matter of testimony as to non-access has been passed upon, the legitimacy of children was

involved, or they were cases between husband and wife for alleged unfaithfulness or inattention to marital obligations, or the like. This is no proceeding affecting the wife or in which she is involved with respect to the relations between her and her husband; no property rights of the husband and wife *inter sese* or as to their children are involved; no question of legitimacy or of inheritance of the children is involved, and no disclosure of the relationship of husband and wife, of such a character as renders it against public policy for either to testify, is presented by this case. We have been referred to no case in which the rule has been extended to cover cases such as the one at bar, where the husband, suing for damages, one of the elements of which was alleged impotency, has been excluded from testifying as to a fact which is a very strong element in the establishment of impotency. It seems to us that the plaintiff was competent to testify as to the fact, "because of the necessity of the case." Cramer v. Hunt, 154 Mo. 112, l. c. 117 to 120. 1 Greenleaf Ev. (14 Ed.), sec. 348, is cited and quoted by Judge Burgess in support of the rule that the necessity of the case makes an exception to the rule itself. No human being but himself or his wife, could, in modesty or morals or in law, possibly know of the existence of the fact. The testimony of any other witness would be theoretical merely. Our conclusion is that there was no error in the admission of this testimony of the husband and that there was, therefore, no error in the refusal of defendant's instructions B and C, or of the embodying of the fourth clause of the instruction concerning the elements of damage which the court gave at the instance of plaintiff.

The fifth point or proposition made by counsel is not tenable. The two physicians referred to show by the examination to which they were subjected that they were fairly competent to testify as experts on the line upon which their evidence was sought.

The sixth point made as to the error of the court in excluding the depositions of Dr. Phelps and Dr. Christie, who were present assisting Dr. Elston in the examination and treatment of plaintiff while in the hospital, in our opinion, is not tenable. It appears that plaintiff objected to these parties as witnesses on the ground that they were his physicians and therefore, without his consent, not competent witnesses as to what had taken place. Our statute (sec. 4659, R. S. 1899) holds a physician or surgeon disqualified and incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." Counsel for plaintiff argue that the evidence which it was proposed to elicit from these two witnesses, is not set out and that it cannot be determined whether it was relevant or not. But it appears from the abstract of the record furnished by appellant, that the depositions of each of these witnesses was offered to be read, but excluded, save a sentence or two from that of Dr. Phelps which was read in evidence. The substance of the depositions was very properly inserted in the record and they are before us. It is argued that the testimony in them is merely cumulative of the testimony already in, and that no reversible error was made in excluding them. We cannot agree to this. The depositions disclose that the testimony offered bore directly on the condition and symptoms and acts of the plaintiff at the hospital as the witnesses saw them, and the testimony of these surgeons bore directly on what they had observed and the conclusions they had arrived at, from inspection of and conversation with the plaintiff. It cannot be said that this testimony was immaterial. Nor can we assent to the proposition that it was merely cumulative, or that it was proper to exclude it because merely cumulative. It was more than that. It was

independent testimony, in corroboration of defendant's theory that the injuries to plaintiff were not of the serious nature claimed.

A party has a right to have all the witnesses heard who have knowledge of facts and circumstances bearing on the case. Limitation of the number of what are called "character witnesses," is an exception to this rule. Possibly there are other exceptions. But this is within the rule. Therefore the exclusion of these depositions must rest solely on the question of whether the witnesses come within the statute quoted as excluding physicians and surgeons from testifying and whether the privilege of exclusion, vested in plaintiff, has been waived.

Cramer v. Hunt, supra, is one among the many cases in which our Supreme Court has held that waiver of the privilege of exclusion rests on the patient alone. It seems to be conceded in this case that Dr. Elston was plaintiff's attending surgeon and that Doctors Phelps and Christie assisted him; that they were in attendance on plaintiff in that capacity. There is nothing in the records to show that the relation of surgeon and patient did not exist between them and plaintiff, as fully as between him and Dr. Elston. [Weitz v. Mound City Railway Co., 53 Mo. App. 39, l. c. 44.] So that unless it be that by testifying as to the injuries and treatment himself and waiving the privilege as to Dr. Elston, plaintiff must be held to have waived it as to these two surgeons, there is no force in the point made by plaintiff. We are referred to Webb. v. Met. Street Railway Co., 89 Mo. App. 604, a decision by the Kansas City Court of Appeals, and to Highfill v. Mo. Pac. Railway Co., 93 Mo. App. 219, a decision by the same court following it, as holding that by going into detail showing that he had been treated by certain doctors at certain times for certain disorders, plaintiff had thrown down the bars and forfeited his right of exclusion of the testimony of the physicians who attended him. We cannot,

after careful consideration of that case and opinion and of the cases referred to therein, agree to this. If by testifying to his injuries and what was done and said by his attendant physicians, the patient threw down the bars, then our statute is abrogated. Nor do we interpret the decision of Mellor v. Railway, 105 Mo. 455,. as sanctioning any such rule. In this latter case, Judge THOMAS for the court *in banc,* adopting the opinion of Judge BARCLAY given in Division No. 1, at page 461, distinctly held that by calling one physician to testify the plaintiff had not waived his right to claim privilege as to others. The case at bar is much stronger than that, for Dr. Elston was not called by plaintiff. He, plaintiff, merely failed to invoke his privilege against Dr. Elston testifying. Furthermore, as we understand the decision of our Supreme Court in Holloway v. Kansas City, 184 Mo. 19, plaintiff by testifying to his injuries and treatment and by failing to assert his privilege as against the testimony of Dr. Elston, a witness called by the defendant, did not waive his privilege to object to the testimony of Doctors Phelps and Christie.

The final point made by counsel for appellant is on the exclusion of evidence of certain statements made by a physician to the plaintiff as to the extent of his injuries. The point of this objection seems to be, that when the deposition was taken, no such objection was made. This assignment is not tenable. [R. S. 1899, sec. 2908.]

Finding no reversible error we think the judgment should be affirmed, but as our decision, on the point indicated, is in conflict with that of the Honorable the Kansas City Court of Appeals in the two cases cited, we certify the case to the Supreme Court.