EDWARD OLIVER, respondent, v. BEN AYLOR, Appellant.

Springfield Court of Appeals, July 28, 1913.

WITNESSES: Physicians and Surgeons: Waiver of Privileged Communication. In an action for personal injuries, the provision of Sec. 6362, R. S. 1909, that a physician or surgeon shall be incompetent to testify concerning any information acquired while attending a patient in a professional capacity and necessary to enable him to act as a physician or surgeon, is waived, where the patient, by his own voluntary testimony and by the evidence of another physician or surgeon, removes the statutory veil of secrecy.

Appeal from Jasper County Circuit Court, Division No. One.—*Hon. Joseph D. Perkins*, Judge.

REVERSED AND REMANDED.

*Thompson & Thompson, P. D. Decker* and *Fred L. Williams* for respondent.

Defendant maintains that when two physicians attended plaintiff and the plaintiff calls one of the doctors as a witness in his behalf, that he thereupon waives the incompetency of the other doctor. Defendant's point is not well taken. Sec. 6362, R. S. 1909; Mellor v. Railroad, 105 Mo. 455; Hoy v. Morris, 13 Gray, 519; Edington v. Ins. Co., 77 N. Y. 564; Westover v. Ins. Co., 99 N. Y. 56, 1 N. E. 104; Hope v. Railroad, 40 Hun, 438, 110 N. Y. 643; Epstein v. Railroad, 143 Mo. App. 135.

*Frank L. Forlow* for appellant.

The plaintiff in releasing the privilege as to Dr. Miller provided by Sec. 6362, R. S. 1909, and permitting him to testify fully as to the injuries of plaintiff, released the privilege as to Dr. Chenoweth or any other physician who had treated him for the injuries. Elliott v. Kansas City, 198 Mo. 593; Fox v. Turnpike Co., 59 N. Y. App. Div. 369; McKinney v. Railroad, 104 N. Y. 352; O'Brien v. Implement Mfg. Co., 141 Mo. App. 331.

STATEMENT.—The respondent, Edward Oliver, recovered of defendant in the circuit court of Jasper county a judgment for one thousand dollars as his damages for personal injuries sustained while working as a shoveler in defendant's mine. He was injured by rocks and dirt falling from the roof which struck him on the head and body, rendering him unconscious and resulting in a scalp wound and an injury to one of

his hands between the wrist and the second joint of the thumb. He was taken by defendant's ground-boss to the office of Dr. L. C. Chenoweth in Webb City who dressed the wounds, and plaintiff was treated by this doctor for a period of about three weeks. On suggestion of a friend he changed physicians and consulted Dr. S. E. Miller of Joplin.

Plaintiff's testimony as a witness in his own behalf, so far as material to a decision on this appeal, is substantially as follows: "When I came to myself (referring to the time just after the injury), I was sitting up before Doctor Chenoweth in Webb City. He had dressed my head, I presume, and had started in on my hand. He treated me from the twenty-ninth of June until the morning of the eighteenth of July, and during his treatment my hand got worse all the time. My hand kept swelling and I couldn't sleep from pain. I thought some bones were broken in it and Doctor Chenoweth took one out. It was festering, and on the fourth of July Doctor Chenoweth lanced it. When I went to Doctor Miller, he said there was danger, and that it ought to be operated on. Doctor Miller put me under the influence of ether and took out the bad flesh. My hand looked black up to the wrist. After Doctor Miller's operation my hand got better and has continued to get in better shape." Plaintiff also testified that from the blow on the head he at times has dizzy spells and becomes unconscious.

Doctor Miller testified for the plaintiff that when the injured man came to his office on the nineteenth of July he had an injured hand, very much swollen and infected, the end of the metacarpal bone being infected and discharging considerable pus; that there was an opening on the inside of the hand and that pus was discharging from both sides; that he was told by plaintiff that there were little pieces of bone coming out of the openings several days prior to July the nine-

teenth; that he opened the hand and found the end of the bone ragged, having the appearance of being broken and crushed; that he cut it square so as to give it a smooth surface with proper drainage; that he treated plaintiff with antiseptics, there being a good deal of inflammation, and made an opening on the inside of the hand so as to give proper drainage, and that the swelling extended on the top of the forearm. He stated that he did not treat the injury on the head as that had healed. He testified that the bone was jagged and crushed and that pieces were working out through the opening of the wound. That when plaintiff came to his office, he was considerably run down, had thin blood, was pale, had considerable fever, and that he was septic—explaining that sepsis means a general poisoning of the system, very often occasioned by an external injury; that he treated plaintiff hypodermically and internally for such condition, and that it was the injury to the hand that caused this condition.

Defendant called as a witness in his behalf Dr. L. C. Chenoweth who was allowed to testify that plaintiff was broughtto his office by an employee of the defendant, and that plaintiff had an injury to his hand and a scalp wound; that he dressed the scalp wound properly, and that the thumb had sustained what he called a lacerated or contused wound, that is, a crushing injury. At this point of his testimony, the attorney for the plaintiff, being permitted to ask a preliminary question, inquired if what he learned with reference to plaintiff's condition was learned while acting in the capacity of a physician and surgeon. On receiving an affirmative answer, objection was made to his testifying as a witness in the case, which objection was sustained and defendant saved an exception. The witness was permitted to testify that he was paid for his services by the defendant.

Defendant then *offered to show* by Doctor Chenoweth that he was employed by the defendant through

John Westcott, defendant's superintendent, to treat the plaintiff for his injury sued for in this case; that he proceeded to treat the plaintiff, and that the injury to his head was simply a scalp wound; that the injury to his hand was an injury only to the thumb; that there was a small piece of bone that he took out; that he had drained the wound on both sides of the thumb, and that at about the end of three weeks the plaintiff left his office and never returned for further treatment; that at the time plaintiff left the office on his last visit his hand and thumb were healing nicely and were in good condition; that there were no signs of blood poisoning or septic conditions to the other part of the hand; that during the time plaintiff was being treated for the injury, he treated him and gave him some medicine for a fever that came on; that plaintiff had no fever at the time of his last visit.

The plaintiff then made the formal objection, stating as the ground of objection that the witness was the plaintiff's physician at the time and that this information was received by him as such. The trial court sustained the objection over defendant's exception.

The sole question for decision is, Did the court commit reversible error in refusing to permit Doctor Chenoweth to so testify?

## OPINION.

FARRINGTON, J. (*after stating the facts as above.*) —Our statute (Sec. 6362, R. S. 1909) gives a patient the right to object to his physician testifying to any information which he may have acquired from the patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.

That the information which came to Doctor Chenoweth—who first treated the plaintiff and who was offered as a witness by the defendant—was acquired by him while attending plaintiff in a professional character and came within the purview of the statute, there can be no doubt. The statute, construed literally, would render incompetent all testimony of physicians acquired while attending a patient in a professional character. Some of the States having a similar statute have provided by a further enactment that the privilege may be waived, but no such enactment is found in our laws. However, our courts in this regard have construed the statute liberally and have held that it is a personal privilege which the patient may, if he so desires, waive. In our judgment, such waiver occurred by reason of the testimony of the plaintiff himself, and by the introduction of the testimony of Doctor Miller as a witness in plaintiff's behalf.

The plaintiff in his testimony states that when he became conscious after the injury he was in Doctor Chenoweth's office, and stated what the doctor was doing. He also told, not only his general condition during the treatment, but particularized as to his injury, stating that Doctor Chenoweth took out a bone, and that the hand was festering, and that on the fourth of July Doctor Chenoweth lanced it; that during the time Doctor Chenoweth was treating him the hand was getting worse, and that toward the end of his treatment the hand was black up to the wrist and was festering and swollen. In this, he opened wide the door, disclosing his version of what took place between himself and his physician and the condition of his injured hand. He had a right, under the statute, to have kept this information locked in the breast of himself and of his physician; he had a right, also, to waive the privilege afforded by the statute and expose what could have been kept secret. Having elected on his part, voluntarily, to make such disclosure, it would in our

Oliver v. Aylor.

judgment be unfair and contrary to all reason and justice to permit him to then deny the defendant the right to show a different state of facts by the only other person who was in a position to know.

But, in this case, the plaintiff went farther with his waiver; he called to the witness stand Doctor Miller who swore that when the plaintiff came to his office on July the nineteenth his hand was very much swollen and infected, and that the end of the metacarpal bone was infected and discharging pus; that there was an opening on the inside of the hand (which corroborates plaintiff's statement that Doctor Chenoweth had lanced it,) and that he was told by the plaintiff that little pieces of bone were coming out of the openings. He detailed the treatment which he gave and the condition of the hand, not only on July the nineteenth when plaintiff first came to him but throughout the entire time plaintiff was under his treatment. He also testified as to plaintiff's general condition, stating that when plaintiff came to him for treatment he was considerably run down, had thin blood, was pale, had considerable fever, and that he was septic, which, if true, must necessarily have been his condition while under Doctor Chenoweth's care. All this the plaintiff could have kept from the jury had he so elected, but desiring to show what Doctor Miller would testify as to the condition of his hand and that the jury might know this, he offered it in evidence, thereby rendering Doctor Miller's testimony competent.

The defendant offered to show by Doctor Chenoweth a state of facts—set out in the statement herein—directly contradicting the testimony of both the plaintiff and Doctor Miller. Defendant offered to show by this physician that when Doctor Chenoweth saw the plaintiff for the last time (which was about three weeks after the injury and one day before Doctor Miller saw him), his hand was healing nicely and was in good

condition, and that there were no signs of blood poisoning or septic condition, and that plaintiff had no fever. Such testimony could be excluded only on the theory that under the law of this State the plaintiff has a right, by virtue of the statute referred to, to detail in his own language, and introduce as a witness a physician of his own choosing to testify, as to the treatment and condition of his injury, thereby waiving the statute as to one of his physicians as to what occurred during the course of the treatment, and then successfully object to the testimony of his other physician when defendant seeks by introducing that physician as a witness to contradict plaintiff's statement of the treatment and condition. I do not believe the law is in such a state nor that it has been so declared by our Supreme Court on a state of facts similar to that disclosed by this record. It will be noticed that the testimony offered to be given by Doctor Chenoweth does not open any new secret or go into any other field with reference to what occurred or what did not occur from that which was disclosed by the plaintiff and Doctor Miller. The offer of Doctor Chenoweth's testimony tended only to show a contradiction of a state of facts which had been gone into by the plaintiff and by Doctor Miller.

An opinion in this case was prepared several months ago holding that plaintiff, by going upon the witness stand and himself lifting the veil, thereby waived the privilege accorded him by statute and that his physician could thereafter be called by the defendant. As this conclusion was plainly in conflict with the ruling of the St. Louis Court of Appeals in the case of Epstein v. Pennsylvania R. Co., 143 Mo. App. 135, 122 S. W. 366, we had decided to ceritfy the case to the Supreme Court, but, upon ascertaining that the Epstein case, which had been certified to the Supreme Court upon an alleged conflict with two decisions of the Kansas City Court of Appeals, had been argued

and submitted, we concluded to withhold our opinion from record and await the decision in that case. It has now been decided (Epstein v. Pennsylvania R. Co., 156 S. W. 699), and the opinion of FARRIS, J., was adopted as the opinion of the court In Banc, holding, "That since plaintiff had himself voluntarily gone upon the stand, and in his case in chief, as a witness for himself, laid bare. for lucre's sake all of the secrets of his sickroom, since he had told and retold what Doctor Elston, his physician, said to him, and what he said to Elston, since he had told the precise nature of his hurts as he said Elston found them, and since he had also voluntarily related the treatment professionally given to him by Elston, he waived the competency of other physicians, also there present, having knowledge of the identical facts." The following language was also used: "In our view whenever these consultations and these secrets of the sick chamber are publicly upon the trial held up to view by the plaintiff himself, by his own voluntary testimony (as in the instant case), or by his offering one, out of two or more of his own physicians, or by his failure and neglect to interpose a timely objection when his physicians are offered by the adverse side, then the bar to the privilege no longer exists." This is conclusive upon us and is in accord with our view. There is now no necessity to burden the report of the case with our discussion of the cases of Mellor v. Railway Co., 105 Mo. 455, 16 S. W. 849; Epstein v. Pennsylvania R. Co., 143 Mo. App. 135, 122 S. W. 366; Holloway v. Kansas City, 184 Mo. 19, 82 S. W. 89; Webb v. Metropolitan St. Ry. Co., 89 Mo. App. 604; Highfill v. Railway Co., 93 Mo. App. 219; O'Brien v. Western Imp. Mfg. Co., 141 Mo. App. 331, 125 S. W. 804; Elliott v. Kansas City, 198 Mo. 593, 96 S. W. 1023; Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709; and Green v. Terminal R. Ass'n., 211 Mo. 18, 109 S. W. 715.

Finding, therefore, that there was reversible error committed in excluding the testimony of Doctor Chenoweth, the judgment is reversed and the cause remanded for a new trial. All concur.