## DAHLQUIST v. DENVER & R. G.•R. CO.

No. 3049.     Decided May 4, 1918.     On Application for Rehearing
Aug. 20, 1918.     (174 Pac. 833.)

1. MASTER AND SERVANT—INJURIES TO BRAKEMAN—NEGLIGENCE OF
   CONDUCTOR—VIOLATION OF RULES.  Where a freight conductor oper-
   ated an engine without authority and in violation of the company's
   operating rules and negligently injured a brakeman, the company
   was liable.  (Page 443.)

2. MATSER AND SERVANT—MASTER'S DUTY—SAFETY OF SERVANTS.  A
   railroad sending out a train is bound to properly safeguard the per-
   sons and lives of its trainmen.  (Page 444.)

3. MASTER AND SERVANT—INJURIES TO BRAKEMAN—NEGLIGENCE OF
   CONDUCTOR—SCOPE OF EMPLOYMENT.  A freight conductor who
   operated an engine without express authority and in violation of
   the operating rules giving him charge of the train and its crew, and
   who negligently injured a brakeman, was acting within the scope
   of his employment.[1]  (Page 445.)

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.  An
   instruction on the burden of proof of contributory negligence re-
   stricting proof thereof to defendant's testimony, standing alone,
   was erroneous.  (Page 446.)

5. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.  On
   conflicting evidence, the burden of showing contributory negligence
   is on defendant, whether the testimony thereon is that of its own
   or plaintiff's witnesses, and in either event it must be established
   by the preponderance of the evidence.[2]  (Page 447.)

6. WITNESSES—PHYSICIAN'S PRIVILEGE—WAIVER.  Plaintiff, who tes-
   tified as to a physician's treatment of and statements to him as to
   the nature of his injury, waived the physician's privilege under
   Comp. Laws 1907, section 3414, subd. 4, as amended by Laws 1911,
   c. 109.  (Page 447.)

7. APPEAL AND ERROR—EXCLUSION OF EVIDENCE—PREJUDICE.  In an
   action for injury the erroneous exclusion of the testimony of the
   attending physician his privilege having been waived, offered by
   defendant as to his treatment of and statements to plaintiff, was
   prejudicial error.  (Page 447.)

---

[1]*Mickelson* v. *Railway Co.*, 23 Utah, 42, 64 Pac. 463.

[2]*Conway* v. *Salt Lake & O. Ry. Co.*, 47 Utah, 510, 155 Pac. 339, L. R. A.
1916 D, 1109.

Appeal from Third District.

On Application for Rehearing.

8. APPEAL AND ERROR—REHEARING—PROPOSITIONS CONSIDERED. New points first brought to Supreme Court's attention on an application for a rehearing, though they were just as available at the hearing on appeal, cannot be considered.[3]  (Page 469.)

9. WITNESSES—PRIVILEGE—"CONSENT"—"WAIVER." Under Laws 1911. c. 109, amending Comp. Laws 1907, section 3414, subd. 4, making a physician incompetent to testify as to any information acquired in attending the patient without the consent of the patient, there is no distinction between "consent" and "waiver." (Page 469.)

10. WITNESSES — PHYSICIAN'S PRIVILEGE—WAIVER—CONSTRUCTION OF STATUTE. Laws 1911, c. 109, amending Comp. Laws 1907, section 3414, subd. 4, making a physician incompetent to testify as to information acquired in attending a patient without the patient's consent, should receive a reasonable construction, and consent may be implied from patient's conduct. (Page 470.)

11. WITNESSES—PRIVILEGE—WAIVER—EFFECT. The waiver of a physician's privilege under Laws 1911, c. 109, amending Comp. Laws 1907, section 3414, subd. 4, does not open the door for immaterial or irrelevant questions. (Page 475.)

12. DAMAGES—PERSONAL INJURIES—CONCURRENT CAUSES. Where a brakeman was injured by the negligence of his employer, and his permanent recovery rendered more precarious and doubtful by reason of a venereal disease, the employer could not claim entire or partial immunity on that account. (Page 475.)

FRICK, C. J., and GIDEON, J., dissenting.

Appeal from the District Court of Salt Lake County, Third District; *Hon. T. D. Lewis,* Judge.

Action by A. Dahlquist against the Denver & Rio Grande Railroad Company.

Judgment for plaintiff. Defendant appeals.

REVERSED and remanded, with directions.

*VanCott, Allison & Riter* for appellant.

[3] *Swanson* v. *Sims.* 51 Utah, 485, 170 Pac. 774.

*Marioneaux, Straup, Stott & Beck* and *M. E. Wilson* for respondent.

. CORFMAN, J.

This was an action brought in the district court of Salt Lake County to recover damages for personal injuries alleged to have been sustained by the plaintiff while in the employ of the defendant as a railroad brakeman. In substance, the complaint alleges that on the 11th day of March, 1915, while the plaintiff was in the employ of the defendant as a rear brakeman on an inter-state freight train, he was directed at Thistle, Utah, by the conductor in charge of said train, to assist in switching a certain car from the defendant's main line to a side track, and while acting in obedience to said order was jerked off the car on which he was required to go, and was injured by reason of the careless and negligent manner in which an incompetent engineer operated the engine and train. The answer denies negligence, and affirmatively alleges that the regular engineer placed in charge of the engine left it to go to an eating house for his meal, and in his absence the conductor of the train, without right or authority, and without instructions from the defendant, proceeded to take charge of the engine and operate it in doing the switching at the time and place plaintiff was injured; that although the conductor was competent to handle the engine, and did handle it competently and carefully, his acts in so doing were contrary to defendant's instructions and wholly outside the scope and course of his employment. Trial was to a jury resulting in a verdict and judgment for the plaintiff. Defendant appeals.

The numerous errors assigned on appeal are directed to the rulings of the trial court in admitting and excluding evidence, in denying defendant's motion for a nonsuit and for a directed verdict, and the giving of certain instructions to the jury.

The facts, in brief, as disclosed by the testimony, are that the plaintiff was, at the time of the accident of which he complains, an experienced railroad brakeman in the employ of the defendant engaged in the duties of a rear brakeman on a

freight train engaged in interstate commerce. The train crew consisted of the plaintiff, as rear brakeman, a head brakeman, conductor, fireman, and an engineer. The train, consisting of about seventy-five cars, was being moved westward from Helper to Salt Lake City. The train arrived at Thistle at about nine o'clock a. m. Before arriving at Thistle, the conductor had received orders to set a car out of the train at that station and leave it upon a siding for transportation over another branch of defendant's railroad. The conductor communicated his orders to the brakeman. Immediately on the arrival of the train at Thistle, the engineer and fireman proceeded to vacate the engine and go to a nearby eating house for their breakfast. Meanwhile, in the absence of the engineer and fireman, without the knowledge of the plaintiff, the conductor mounted the engine and began operating it in the cutting out of the car to be left at Thistle, and switching it from the defendant's main line to the side track where it was to be left. The testimony further shows that the signals given in this switching process were first given by the conductor in charge of the engine to the head brakeman, and by him communicated to the rear brakeman, the plaintiff, who was not in a position to see the conductor on the engine. In the movement of the train of cars by the engine a violent backward jerk of the car occurred on which the plaintiff was required to go in order to do his work, causing him to break his hold upon the ladder at the side and fall to the track, where the wheels ran over his leg and inflicted the injuries of which he complains. There is very little conflict in the evidence, except as to whether or not the engine was negligently handled by the conductor. There is substantial evidence in the record that tends to show the conductor was negligent in that regard.

The principal errors assigned by defendant on appeal go to the question whether or not, as a matter of law, the defendant is liable to the plaintiff for the injuries he sustained while the conductor was thus operating the engine in the absence of the engineer.

It must be conceded from the testimony given in this case that, both in actual practice and under the rules of the de-

fendant company, the only person who could rightfully operate the engine was the engineer. Rule 443 of the defendant company provides:

"While switching, engineer and fireman must remain on the engine and must exercise great care in handling the engine while yardmen or trainmen are making couplings, and also give close attention to signals."

The engineer testified:

"Under the company's instructions and rules and regulations, at that time it was my duty to operate the engine, and nobody's else."

The plaintiff himself testified:

"I know that the conductor had no right to run the engine. I know that Conductor Clifford, on that occasion, had no right to operate that engine."

The conductor testified:

"I had no excuse at all for operating the engine; none whatever. It was a responsibility I assumed myself. It was an utter disregard of the orders of the company, without any reason whatever."

It is therefore contended by the defendant that the conductor of the train was operating the engine at the time of the accident in question without any authority from the defendant and beyond the scope and the duties of the      1, 2 employment.

It becomes important, in view of the foregoing testimony and the contention made by the defendant, that we take into consideration the effect of certain other rules offered in evidence bearing upon the functions of the conductor and the scope of his duties while in charge of defendant's train. They provide:

Rule 334 (with respect to freight conductors). "They will be held responsible for the conduct of all persons employed on their trains, and must report any misconduct or neglect of duty."

Rule 315. "Station work should be done immediately on arrival."

Rule 317. ''Conductors will comply with instructions of agents in placing cars and doing other station work. If necessary to move cars for loading or unloading, they must be replaced.''

Rule 204. ''Train orders must be addressed to those who are to execute them, naming the place at which each is to receive a copy. Those for a train must be addressed to the conductor and engineer, and also to any one who acts as its pilot. A copy for each person addressed must be supplied by the operator. Orders addressed to operators respecting the movements of trains must be respected by conductors and engineers the same as if addressed to them.''

The trial court, in the face of the foregoing uncontradicted testimony, denied defendant's motion for a nonsuit and also a motion for a directed verdict in defendant's favor, and proceeded at the conclusion of the testimony to instruct the jury as follows:

''The court instructs you as a matter of law that under the undisputed evidence in this case the conductor stood in such relation to the train and the engine that his acts must be deemed to be the acts of the defendant company. In handling the engine himself he was violating his duty to the company, but his act was nevertheless the act of the company. You are therefore instructed that, if you find from a preponderance of the evidence that the plaintiff's injuries were caused by the negligence of the conductor in the manner of his stopping the train at the time of the accident, the defendant company must answer in damages to the plaintiff, notwithstanding the fact it had forbidden its conductors to operate its engine.''

Under the facts and circumstances disclosed by the record on this appeal, we are of the opinion that the rulings of the trial court in denying defendant's motion for a nonsuit and for a directed verdict, and the giving of the foregoing instruction to the jury, over the defendant's objection, are to be sustained, both on principle and authority.

While the testimony shows that the act of the conductor in operating the defendant's engine was in disobedience of the

instructions and rules of the defendant company, yet it appears that the nature of his employment was such that at all times it became his duty as a representative of the defendant to answer "for the conduct of all persons employed on the train"; that, while under the defendant's rules it was the duty of the engineer and fireman to remain upon the engine when the train crew was engaged in switching cars, the train was to be run under the directions of the conductor. The defendant's rules required the conductor to see to it that "station work was done immediately on arrival" of the train, and "conductors will comply with instructions of agents in placing cars and doing other station work," and in doing so he is to be held responsible for the safety of the train.

It would be difficult to conceive of circumstances under which the master could more justly be held to answer for the negligent act of the employee than in the case at bar. The acts of the plaintiff and every other member of the train crew were under the direct supervision of the defendant's conductor. He directed them in all their work and in the full performance of their duties. He was expressly charged, under the instructions and rules of the defendant, with the safety of the train and in seeing that its movement was so directed as to afford safety for defendant's employees while engaged in their work upon it. As to the plaintiff in that particular he failed. From the very necessity of things his wrongful and incompetent acts in that regard must relate back and be attributable to the defendant. The plain duty of the defendant in sending out a train of cars to properly safeguard the persons and lives of its employees working upon it cannot be questioned. The responsibility must rest somewhere. That it may not be shifted from the defendant company to its chosen conductor, who is given full control and directs every movement of the train, because he disregards or violates the instructions given him and wrongfully does himself what he is empowered to direct others to do, to our minds is equally plain.

Counsel for defendant contend that as a matter of law the conductor's acts in operating the engine were not "within the

scope of his employment," and in support of that contention have cited and quoted copiously in their brief and argument from the following cases and authorities, to-wit: *Herbert v. Fox,* 1 L. R. App. Cas. 405; *Roe v. Burkenhead, L. & C. J. R. Co.,* 7 Exch. 36; *Washington Gaslight Co. v. Landsden,* 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543; *Spokane & Inland Empire R. Co. v. Campbell,* 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125; *Lake Shore, etc. Ry. Co. v. Prentice,* 147 U. S. 101, 109, 13 Sup. Ct. 261, 37 L. Ed. 97; *Byrne v. Londonderry Tramway Co.,* 2 I. R. 457; *Fredericks v. Chicago & N. W. R. Co.,* 96 Neb. 27, 146 N. W. 1011, L. R. A. 1916F, 869; *McKenzie v. McLeod,* 10 Bing. 385; *Mitchell v. Craswell,* 13 Com. Bench, 237; *Pittsburg, C., C. & St. L. Ry. Co. v. Adams,* 25 Ind. App. 164, 56 N. E. 101; *Walker v. Hannibal & St. J. R. Co.,* 121 Mo. 575, 26 S. W. 360, 24 L. R. A. 363, 12 Am. St. Rep. 547; 6 Labatt, M. & S. (2d Ed.) section 2285; *Philadelphia & R. R. R. Co. v. Derby,* 14 How. 468, 14 L. Ed. 502; *Limpus v. London Omnibus Co.,* 1 H. & C. 526, 130 Rev. Rep. 641; *New York Central, etc., R. R. Co. v. United States,* 212 U. S. 481-483, 29 Sup. Ct. 304, 53 L. Ed. 613; *Baltimore & O. R. Co. v. Doty,* 133 Fed. 866, 67 C. C. A. 38; *International Text-Book Co. v. Heartt,* 136 Fed. 129, 69 C. C. A. 127; *Healy v. Patterson,* 123 Iowa, 73, 98 N. W. 576; *Western Real Estate Trustees v. Hughes,* 172 Fed. 206, 96 C. C. A. 658; *Aldrich v. Boston & W. R. R. Co.,* 100 Mass. 31, 1 Am. Rep. 76, 97 Am. Dec. 74; *Fitzgerald v. Fitzgerald, etc., Cons. Co.,* 44 Neb. 463, 62 N. W. 899-904; *Goodloe v. Memphis & C. R. Co.,* 107 Ala. 233, 18 South. 166, 29 L. R. A. 729, 730, 54 Am. St. Rep. 67; *Rounds v. D., L. & W. Ry.,* 64 N. Y. 129, 21 Am. Rep. 597; *Core v. Ohio River R. Co.,* 38 W. Va. 456, 18 S. E. 596; *Mickelson v. Railway Co.,* 23 Utah, 42, 64 Pac. 463.

We have examined these cases and authorities with more than ordinary care, and they but tend to show the manifold application of the words "within the scope of his employment" to given statements of facts and circumstances, without demonstrating that the words are susceptible of being so defined that they may be held to be of general application. In

other words, when fully considered, they demonstrate nothing more than the difficulty the courts have in the application of the phrase, particularly in cases involving the liability of a master for the negligent or wrongful acts of his servant. Their perusal convinces that the question as to whether or not a servant is acting "within the scope of his employment" at the time of the commission of a wrongful or negligent act causing an injury to a third party must be determined from the facts and circumstances of the particular case under consideration.

For the reasons heretofore assigned, we think the case at bar can be very readily distinguished from the many cases cited by counsel for defendant in their brief and argument. True, the defendant's conductor was not acting under any express authority, and his acts in operating the engine were irregular and in violation of the defendant's rules; but, nevertheless, the very duties he was called upon to perform, in directing and controlling the train and its crew while in the service of the defendant, were such that when he wrongfully undertook to operate the engine in the absence of the engineer, and the plaintiff was thereby injured by reason of his careless and negligent acts, he was still acting in the performance of the defendant's service and was within the scope of his employment. *Conchin v. El Paso & S. W. R. Co.*, 13 Ariz. 259, 108 Pac. 260, 28 L. R. A. (N. S.) 88; *Jones v. Weigand*, 134 App. Div. 644, 119 N. Y. Supp. 441.

It is also contended that the trial court erred in charging the jury as to the burden of proof of contributory negligence.

The instruction complained of as given by the court was as follows:

"In this case the defendant pleads that the plaintiff at the time of receiving his injuries was guilty of negligence that contributed to his own injury. On this issue the court instructs you that the burden of proof is on the defendant; and if upon this issue the preponderance of the evidence is in favor of the plaintiff, or if it is

equally balanced, you should find such issue in favor of the plaintiff."

Standing alone, the instruction, as given, would be clearly erroneous, in that it thus restricts the proof as to contributory negligence to the defendant's testimony alone, and deprives the defendant of the benefit of plaintiff's testimony in that regard.

The rule bearing on this question was announced by Mr. Justice Frick, speaking for this court in the case of *Conway v. Salt Lake & O. Ry. Co.*, 47 Utah, 510, 155 Pac. 339, L. R. A. 1916D, 1109, wherein it was said:

"The true rule in this jurisdiction is that when the evidence is conflicting, or when different inferences may be drawn therefrom, the burden of establishing contributory negligence is upon the defendant, regardless of whether the evidence with regard thereto comes from the plaintiff's or the defendant's witnesses, and in either event contributory negligence must be established by a preponderance of the evidence given upon that subject."

However, in the case at bar, the court told the jury by a subsequent instruction that they "should consider all of the evidence together and should not pick out any particular statement of any witness and give it undue weight." Moreover, the record here fails to disclose any testimony given in behalf of the plaintiff tending to show that the plaintiff was guilty of contributory negligence, and therefore the giving of the instruction complained of cannot be held to be prejudicial error.

It is further contended by the defendant that the trial court erred in refusing to permit a physician, who had attended the plaintiff for his injuries, to testify. On direct examination the plaintiff himself had testified somewhat in detail concerning the character and extent of his injuries, the pain and suffering endured, and his physical condition before and since the accident. The plaintiff had also testified concerning the mode of treatment of his injuries and their character as described to him by the physician, Dr. John F. Critchlow, whose competency to testify was challenged by the plaintiff under the provisions of

subdivision 4, section 3414, Comp. Laws 1907, as amended by chapter 109, Laws Utah 1911, which provide:

"A physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Defendant contends that the plaintiff's right to invoke the provisions of the foregoing statute was waived when the plaintiff himself testified concerning his physical condition before and after the accident, the character and extent of his injuries, and the mode of treatment, and also by reason of the plaintiff having produced as a witness, in his own behalf, Dr. H. S. Scott, a physician who had also attended and examined him, who testified in great detail concerning the character and extent of the injuries received by plaintiff in the accident, and the actual and probable results as affecting his future ability to perform manual labor, before the defendant produced Dr. Critchlow as a witness in its behalf and propounded to him the following questions:

"Q. Now, what did you ascertain from your first examination of Mr. Dahlquist's leg?

"Q. State the condition of the bones, as you saw them.

"Q. On various occasions—don't state what you saw—just answer yes or no, whether or not on various occasions you made an examination of his leg in treating it, and saw what the conditions of the bones were?  A. Yes, sir.

"Q. And the union after some considerable time after the accident?

"Q. You did see the bone itself, Doctor, some considerable time after you had the case in charge, from time to time?

"Q. From 'what you saw of the condition of the bone, Doctor, I wish you would state whether there was any condition there which indicated to you the possibility or probability of the presence of syphilis.

"Q. Did you, yourself, treat the plaintiff for syphilis?

"Q. Did you inform the plaintiff at any time that he was being treated for syphilis?"

In view of the record here, we think the ruling of the trial court in refusing to permit the witness Dr. Critchlow to make answer to the foregoing questions was not only erroneous, but clearly prejudicial to the defendant's right to a fair and impartial trial of the issues involved in this action. When the witness Dr. Critchlow was offered by the defendant and the foregoing questions propounded to him, the plaintiff had not only, as we have heretofore pointed out, voluntarily permitted one of his physicians to testify at great length concerning the character and extent of the injuries complained of, but also as to their permanency and the effect they would have in after years, and the causes therefor, and as to the conclusions he had reached why they were not occasioned by the syphilitic condition of the plaintiff. The plaintiff had also testified in his own behalf that:

"The doctor found that gristle had grown in between the bones, and told me that I had a fibrous union. * * * My leg is bent out a little bit now, and if I were to use any more pressure on it, as Dr. Critchlow said, I might get a bigger bow."

We cannot conceive of a case wherein the very purpose of the statute, as declared in the language of the statute itself (section 3414) that "there are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate," could be more clearly waived than in the case at bar, when the plaintiff by himself and one of his examining physicians voluntarily disclosed by their testimony (obviously for the purpose of enhancing the amount of his claim for damages against the defendant) all the statute was designed to preserve to the plaintiff as inviolate.

While there are some cases to the contrary, we think the great weight of authority sustains our view that in the case at bar the plaintiff waived his privilege under the statute, and that the trial court erred in refusing to permit the defendant's witness Dr. Critchlow to testify. Wigmore, Evidence, sections 2388-2390; Chamberlayne, Mod. Law of Evid. section 3705a; 40 Cyc. pp. 2399, 2400; *City of Tulsa v. Wicker*, 42 Okl. 539, 141 Pac. 963; *McKinney v. Grand Street R. Co.*, 104 N. Y. 352, 10 N. E. 544; *Webb v. Met. St. Ry. Co.*, 89 Mo. App.

604; *Lane v. Boicourt,* 128 Ind. 420, 27 N. E. 1111, 25 Am. St.
Rep. 442; *Treanor v. Manhattan Ry. Co.,* 16 N. Y. Supp. 536;
*Epstein v. Pennsylvania R. Co.,* 250 Mo. 1, 156 S. W. 699, 48
L. R. A. (N. S.) 394, Ann. Cas. 1915A, 423.

Doubtless it was the purpose of the defendant in producing
Dr. Critchlow as a witness to show by his testimony the
falsity of, or to at least qualify, the statements made by the
plaintiff and the witness Dr. Scott concerning plaintiff's in-
juries, their treatment, and plaintiff's then physical condi-
tion, resulting therefrom. The right to do so, tested by every
principle of justice, in our judgment, should have been ac-
corded it by the trial court.

It is therefore ordered that the judgment of the district
court be, and it is, reversed, and the cause is remanded to said
court with directions to grant a new trial and to proceed in
accordance with the views herein expressed. Defendant to re-
cover costs.

McCARTY, J.

I concur in the reasoning of, and in the conclusions ar-
rived at by, Mr. Justice CORFMAN respecting the matters
and issues involving the alleged negligence of defendant and
the contributory negligence of the plaintiff. I am of the
opinion that the court, in view of the evidence of plaintiff
respecting the treatment Dr. Critchlow gave his injured leg
and what the doctor at the time said to him respecting the
injury erred in excluding the proffered evidence of the doctor
on those points. I am, however, of the opinion that the court
did not err in excluding the evidence offered as to whether
or not plaintiff was, at the time he was injured, afflicted with
syphilis. The record shows that respondent testified at con-
siderable length respecting the medical treatment that Dr.
Critchlow gave his injured leg and related somewhat in detail
the things the doctor said and did in that regard during the
several weeks he was under the doctor's care. The following
is a synopsis of his testimony on that phase of the case:

"I went to St. Mark's hospital. I was treated by Dr. Critchlow. The third or second day * * * Dr. Critchlow put it (the limb) in a box and then he afterwards straightened it by getting hold of the leg here with his hand and over there with his other hand, and he had the nurse hold the leg—he just straightened it over. * * * They had to give me opiates several times to relieve the pain."

The record shows that, about two weeks after respondent arrived at the hospital, Dr. Benjamin, under the direction and supervision of Dr. Critchlow performed an operation on the injured limb.

Respondent further testified:

"The operation was on the 6th of July. The doctor found out that gristle had grown in between the bones and told me that I had a fibrous union; that I had to go back for another operation and have the fiber cut out and the bones united closer. * * * My leg is bent a little now, and, if I were to put any more pressure on it, as Dr. Critchlow said, I might get a bigger bow. * * * If it wasn't for the fact that I have a very tight elastic stocking on now, it would be twice the size. * * * I wear that under the directions of Dr. Critchlow. * * * I am still under the doctor's care."

Counsel for appellant contend that:

Respondent, by "going upon the stand and relating in great detail the character and extent of his injuries, the treatment applied by the doctor, as well as to certain statements made to him by the doctor touching upon his injuries and the nature thereof, * * * impliedly waived a privilege which he otherwise might have insisted upon."

I think counsel's contention in that regard is supported by the weight of authority—the better reasoned cases. I think respondent could very properly, without waiving his right to object to the doctor testifying with respect to the injuries and the treatment the doctor gave him, testify to his general condition and describe the nature and extent of his injuries as he saw and felt them without referring to what the doctor may have told him or did for him concerning the injuries. *Noelle v. Hoquiam L. & S. Co.*, 47 Wash. 519, 92 Pac. 372; *May v.*

*Northern Pac. Ry. Co.,* 32 Mont. 522, 81 Pac. 828, 70 L. R. A. 111, 4 Ann. Cas. 605; *McConnell v. City of Osage,* 80 Iowa, 293, 45 N. W. 550, 8 L. R. A. 778. He could not, however, testify to what the doctor said to him respecting the nature and extent of his injuries and the treatment applied by the doctor without waiving his statutory privilege to object to the doctor testifying. As the Supreme Court of New York aptly remarked in the case of *McKinney v. Grand Street, etc., R. Co.,* 104 N. Y. 352, 10 N. E. 544:

"The patient cannot use this privilege both as a sword and a shield, to waive when it inures to her advantage, and wield when it does not."

THURMAN, J.

If I understand the views of my Associates, we all agree that the defendant is liable for the negligence which resulted in the plaintiff's injury. We disagree as to the ruling of the trial court sustaining plaintiff's objections to the questions propounded to defendant's witness Dr. Critchlow. I concur in the conclusion reached by Mr. Justice CORFMAN and Mr. Justice McCARTY that the trial court erred in sustaining the objections.

As I read the opinion of Mr. Justice McCARTY, I concur in his views both as to the conclusions reached and the reasons given therefor. I concur with Mr. Justice CORF-MAN to the extent that the plaintiff waived his privilege when he voluntarily testified concerning the conduct, statements, and opinions of Dr. Critchlow. This, I believe, is the only ground upon which it can be claimed that the plaintiff waived his privilege. But upon this ground, both on reason and authority, I am of the opinion he waived the privilege, and that therefore the court erred in not permitting Dr. Critchlow to answer the questions. The first, second, fourth, and fifth questions in particular were certainly proper. The third was answered. The sixth, seventh, and eighth may have been objectionable on other grounds, but not on the grounds of privilege, for that was waived. These questions

appear in the opinion of Mr. Justice CORFMAN and need not be repeated here.

The plaintiff, no doubt, was seriously injured.  He brought his action for damages in the sum of $3,000.  The extent of his damages was, in the view of this court, the only substantial ground of controversy.  Plaintiff at the trial took the witness stand in his own behalf.  In his examination in chief he testified voluntarily of his relations with Dr. Critchlow, which was clearly that of patient and physician.  Dr. Critchlow was in charge of his case at the hospital when he was under treatment.  Plaintiff testified as to the treatment administered by the doctor, what the doctor said respecting the injury, certain consequences likely to follow, and the necessity for further treatment.  A considerable portion of this testimony is quoted literally in the opinion of Mr. Justice McCARTY.  It tended to show that in the opinion of Dr. Critchlow the injury was very serious.  By this means the plaintiff succeeded in getting before the jury his version of Dr. Critchlow's opinion and diagnosis without putting Dr. Critchlow on the stand.  It was right and proper for him to do this if he chose, especially if no objections were raised, and probably would have been proper even as against objection; but the unfair - and unjust procedure occurred afterwards when the doctor himself was called as a witness for the defendant.  At this point the plaintiff invoked his privilege. Plaintiff was permitted to exploit the opinions, treatment, suggestions, and diagnosis of the doctor; but, when it came to obtaining the information first hand from the doctor himself, objection was raised, the testimony was excluded, and in the opinion of the writer the defendant was thereby deprived of a substantial right—a right that is usually accorded to every litigant in the trial of a case.

If the plaintiff had testified from his own knowledge concerning his injuries, the operations he had undergone, the pain and suffering he endured, the weakness and disability resulting, his incapacity for business, and the permanence of the injury without injecting into his testimony the statements, suggestions, and opinions of Dr. Critchlow, it could

not, in my judgment, be successfully contended that he had waived his privilege. Neither can it be contended, in my opinion, that he waived it when he put Dr. Scott on the stand and examined him concerning his injuries. There are authorities, however, that go to the extent that even that would constitute a waiver; but I am not disposed to follow them.

The plaintiff undoubtedly had the right to present his case, and present it fully. He could call in any physician he might select and examine him to the fullest extent permissible in a court of justice, either from the standpoint of actual knowledge or expert opinion; but he had no right to inject into his testimony the conduct, statements, opinions, and diagnoses of other physicians concerning his injury, and then exclude the testimony of such physicians on the grounds of privilege.

The plaintiff voluntarily told the court and jury what the doctor found as to his injuries; but the doctor himself, when asked what he found, was not permitted to answer. The plaintiff voluntarily told the court and jury the condition of the bones of his leg as stated to him by Dr. Critchlow; but, when the doctor was asked as to the condition of the bones, he was not permitted to answer. The plaintiff voluntarily testified as to what the doctor saw respecting the condition of the bones of his leg; but the doctor was not even permitted to tell what he saw, much less express an opinion concerning it. The whole proceeding, in the opinion of the writer, to say the least, was a perversion of justice, if not an absolute travesty. It was anything but even-handed justice. It was not a square deal, and, as stated, in effect, by many courts, whose opinions have already been cited by my Associates, it was using as a sword against his adversary the privilege which was merely intended for his own protection. If this is the meaning and extent of the statute under which the privilege is claimed, the sooner the statute is repealed the better it will be for the administration of justice. But the very fact that such an interpretation of the statute may,

as in this case, lead to rank injustice, is sufficient in itself to cause us to doubt the correctness of the interpretation.

It is inconceivable that the Legislature could have intended that a party litigant might be permitted to place before a court or jury the opinions, diagnoses, and treatment of his physician to the extent that the party is benefited thereby, and then by invoking his privilege close the mouth of the physician and prevent him from placing before the same court or jury his version of the same transaction or matter in controversy—prevent him from giving his version of his own statements and opinions which might have been distorted and exaggerated by the party for his own advantage. We do not say that such was done in the case at bar; we are speaking against a principle which tends to admit of, and affords an opportunity for, such intolerable wrong in the trial of a case.

My position is that the plaintiff, for the reasons above stated, waived the privilege given him by the statute; that he waived it for all purposes as against the witness Critchlow. He waived it, not alone to the extent of permitting the witness to contradict or qualify the testimony given by himself concerning the witness, but waived it to the extent of permitting the defendant to use the witness for any and all purposes for which any witness may legitimately be used, unhampered by any question of privilege. These views, I believe, are sustained by the preponderance of judicial opinion. I have not taken the trouble to count the cases to determine the question of numerical preponderance; but I mean the weight of opinion founded upon reason, common sense, and the practical administration of justice—quality as distinguished from quantity—applying the same rule that we would apply in determining a question of fact, not necessarily by the number of witnesses testifying for or against the proposition, but the reasonableness of their testimony and the probability of its being true.

This identical question has not heretofore been determined by this court. It has, however, frequently been passed upon by courts in other jurisdictions. The cases supporting the

exact point in question, cited by Mr. Justice CORFMAN, which we have examined, and some others in addition thereto, are as follows: *Highfill v. Mo. Pac. R. Co.*, 93 Mo. App. 219; *Oliver v. Aylor*, 173 Mo. App. 323, 158 S. W. 733; *Treanor v. Manhattan Ry. Co.*, 16 N. Y. Supp. 536; *Marx v. Manhattan Ry. Co.*, 56 Hun. 575, 10 N. Y. Supp. 159; *Epstein v. Penn. R. Co.*, 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 394, Ann. Cas. 1915A, 423; *Rauh v. Deutscher Verein*, 29 App. Div. 483, 51 N. Y. Supp. 985; *Lane v. Boicourt*, 128 Ind. 420, 27 N. E. 1111, 25 Am. St. Rep. 422; *Webb v. Met. St. Ry. Co.*, 89 Mo. App. 604. Several other cases cited by Mr. Justice CORFMAN, not included in the above list, have more or less bearing to the same effect and are worthy of consideration in this connection.

The cases cited by respondent with one single exception do not controvert the rule sustained by the cases above cited. *Ind. Rapid Transit Co. v. Hall*, 165 Ind. 557, 76 N. E. 242, seems to be in point against the rule, and that is the only one as we read the cases. A careful reading of that case will disclose that it was not thoroughly considered—in fact, no reasons are given why the case of *Lane v. Boicourt*, supra, in which a strong opinion was rendered, should be overruled.

In view of this fact, the writer feels justified in assuming that the views herein expressed are sustained, not only by the better considered opinions of the courts that have passed upon this particular question, but by the numerical preponderance as well.

The cases cited by respondent, with the single exception noted, distinguish themselves from the case at bar. They are as follows: *Ind. Rapid Transit Co. v. Hall*, supra, which we have considered; *McAllister v. St. Paul City Ry. Co.*, 105 Minn. 1, 116 N. W. 917; *Hilary v. Minneapolis St. R. R. Co.*, 104 Minn. 432, 116 N. W. 933; *Cohodes v. Co.*, 149 Wis. 308, 135 N. W. 879; *Green v. Town, etc.*, 113 Wis. 508, 89 N. W. 520; *Noelle v. Hoquiam Lbr. & Shingle Co.*, 47 Wash. 519, 92 Pac. 372; *May v. N. P. Ry. Co.*, 32 Mont. 522, 81 Pac. 328, 70 L. R. A. 111, 4 Ann. Cas. 605; *McConnell v. City of Osage*, 80 Iowa, 293, 45 N. W. 558, 8 L. R. A. 778.

It is not necessary to point out the distinguishing features of these cases, which would only tend to unduly lengthen this opinion. It is already extended beyond the limits intended, but the question is important, and under the circumstances the opinion of the writer is perhaps necessary to a decision of the question involved. I would be untrue to myself and unfair to my Associates who disagree with me if I assumed that they are entirely without justification for their divergent views. Nearly every question that becomes a matter of controversy in the tribunals of the country can find support on both sides of the question. I am therefore not disposed to criticize the views of my Associates who disagree with me, much as I would like them to view the case as I view it and join in making our decision unanimous. The rule here invoked is not unfair. It is not harsh or oppressive. It does not arbitrarily invade the sanctity of the privilege in question. The patient is a party litigant and to him the privilege belongs; it is under his complete control. He cannot be deprived of it by the conduct of his adversary. If he loses it, his own conduct is responsible.

For the reasons above stated, and for those only, with my present light on the question, I am of the opinion that the court erred in not permitting the questions propounded to the witness Critchlow to be answered, especially the questions particularly specified by me in the beginning of these remarks. I am also of the opinion that the error was prejudicial and that the judgment of the trial court for that reason should be reversed.

FRICK, C. J.

I fully concur with Mr. Justice CORFMAN in the conclusion reached that the appellant is liable for the acts of the conductor although he acted contrary to its rules and orders. I am unable, however, to concur in the conclusion reached by the justice that the respondent in testifying to the nature and extent of his injuries waived the privilege conferred on him

by Comp. Laws 1907, section 3414, as amended by chapter 109, Laws Utah 1911, and which section, so far as material, is set forth in Mr. Justice CORFMAN'S opinion.

The importance of the question just referred to, and the divergent views entertained by my Associate and myself, make it necessary for me to do more than merely register my dissent. I shall therefore, as briefly as possible, state the reasons that impel me to arrive at a conclusion different from that reached by Mr. Justice CORFMAN, and in that connection I shall review, as briefly as may be, the authorities cited and relied on by him.

It must not be overlooked that in this case it is conceded that the physician to whom the seven questions were propounded, all of which are set forth at length in the opinion of my Associate, was the attending and the only attending physician who treated the respondent for his injuries. The physician therefore comes clearly within both the letter and the spirit of the statute above referred to. The conclusion of Mr. Justice CORFMAN is therefore entirely based upon the contention that the respondent had waived the privilege given by the statute by taking the stand and testifying to the nature and extent of his injuries and in exhibiting to the jury the injured leg and in fully explaining the nature and extent of his suffering, etc., and in calling Dr. Scott to explain to the jury the nature of the injury and the condition of the fractured leg at the time of the trial. It is not necessary for me to repeat the questions propounded to the doctor and to which the district court sustained objections. I shall therefore merely refer to them as they are copied in Mr. Justice CORFMAN'S opinion.

In view that Dr. Critchlow, to whom the questions were propounded, was the physician who treated respondent's injuries, as before stated, the first and second questions propounded to him were clearly privileged, and therefore the objection was properly sustained as to those unless the privilege was waived. The third question was answered, and hence there is nothing to that. The fourth question was in fact

merely a part of the third one. The fifth question merely called for a direct answer of yes or no, and such an answer would not have affected anything either one way or the other. This therefore leaves only the last three questions for consideration, and all of those were clearly and manifestly improper unless respondent had waived his right to claim the privilege. The last three questions were, however, not only improper because of the privilege, but they were wholly irrelevant and immaterial. The question of whether the respondent was of sound or unsound physical health at the time of the injury was of no consequence whatever. If the appellant negligently injured him, it was liable for the direct and natural consequences resulting from such injury, regardless of respondent's physical condition, and appellant could not avail itself of any inherent or acquired disease or weakness of the respondent as a defense. That principle has so recently been decided by this court in harmony with the overwhelming weight of authority in the case of *Farnon v. Silver King, etc., Co.*, 50 Utah, 295, 167 Pac. 675, that it is not necessary for me to say more upon that subject.

This brings me to the crucial question in the case, namely: Did the respondent waive his privilege by what he testified to and did on the trial and in calling Dr. Scott to testify to the condition of his injured leg at the time of the trial?

Mr. Justice CORFMAN cites the following authorities in support of his conclusion that respondent had waived the privilege, and that for that reason the district court erred in sustaining the objections to the question before referred to, namely: Wigmore, Ev. sections 2388-2390; Chamberlayne, Mod. Laws of Ev. section 3705a; 40 Cyc. pp. 2399, 2400; *City of Tulsa v. Wicker*, 42 Okl. 539, 141 Pac. 963; *McKinney v. Grand Street R. Co.*, 104 N. Y. 352, 10 N. E. 544; *Webb v. Met. Street Ry. Co.*, 89 Mo. App. 604; *Lane v. Boicourt*, 128 Ind. 420, 27 N. E. 1111, 25 Am. St. Rep. 442; *Treanor v. Manhattan Ry. Co.*, 16 N. Y. Supp. 536; *Epstein v. Penn. R. Co.*, 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 394, Ann. Cas. 1915A, 423.

I shall not take the time to review the citations from Wigmore and Chamberlayne. I shall, however, as briefly as possible, review the other authorities cited.

In 40 Cyc. 2400, which is cited by Mr. Justice CORFMAN, the rule is stated in the following words:

"The fact that a client or patient becomes a witness, even though he does so voluntarily, does not render the attorney or physician competent to testify as to privileged matters, unless the client or patient has first testified as to such matters voluntarily, or at least without objection, in which case the privilege is lost. The fact that the patient has testified as to his physical condition, or the nature of his disease or injuries, does not qualify his physician to testify in regard thereto. Where the client has offered himself as a witness, he becomes liable to full cross-examination like any other witness, and cannot refuse to answer as to his communications to his attorney; but it has been held that the fact that the client or patient on cross-examination answers, even without objection, questions as to communications to his attorney or physician, as to which no testimony was given on his direct examination, is not a waiver of his right to object to the attorney or physician testifying to such communications."

The decision in the case of *Tulsa v. Wicker*, 42 Okl. 539, 141 Pac. 963, is based entirely upon a provision in the Oklahoma statute which reads: "If a person offer himself as a witness, that is to be deemed a consent to the examination" of the physician. Comp. Laws Okl. 1909, section 5842, subd. 6. That is, the plaintiff in a personal injury action in testifying to the character and extent of his injury thereby consents that the physician who treated him for those injuries may be examined by the adverse party respecting those injuries. The case therefore rests entirely upon the special provision contained in the Oklahoma statute to which I have referred, and is therefore not an authority under a statute like ours.

The case of *McKinney v. Grand Street R. Co.*, 104 N. Y. 352, 10 N. E. 544, merely holds that, where the injured person calls the attending physician to testify in his behalf concerning the nature and extent of his injuries, he thereby waives the privilege, and cannot in a subsequent trial of the same case prevent the defendant from calling the physician to testify respecting the matters he testified to on the first

trial. The decision is therefore based upon the ground that in calling the physician to testify in his behalf the plaintiff waives the privilege afforded by the statute, and, if he once waived it, he cannot thereafter recall it. No one, I think, will, nor in reason can, complain of that decision. That, however, does not decide the question involved in the case at bar.

The next case is the case of *Webb v. Met. Street Ry. Co.,* 89 Mo. App. 604. That case, in my judgment, is also clearly distinguishable from the case at bar. In that case the plaintiff, a woman, testified that she had been treated for certain ailments or diseases by certain physicians, naming them, before her present injuries, for the purpose of showing that the ailments complained of were produced by the present injuries involved in the action and that she had not been afflicted with the latter ailments before the injuries were inflicted upon her. The defendant produced the doctors referred to by the plaintiff and offered to prove by them that they had not treated her for the ailments she had described in her testimony, to which offer she objected on the ground that the testimony of the doctors was incompetent under the statute. The trial court sustained the objection, and the Missouri Court of Appeals reversed the ruling of the trial court upon the ground that the plaintiff, in fully testifying to her former ailments and to the treatment of the doctors, thereby waived the privilege at least to the extent that she had disclosed the nature of the ailments and the treatment she had received. The Court of Appeals therefore ruled that the doctors should have been permitted to contradict the statements of the plaintiff and that it constituted error not to permit them to do so.

*Lane v. Boicourt,* 128 Ind. 420, 27 N. E. 1111, 25 Am. St. Rep. 442, is a case where a patient sued his physician for malpractice. The patient, fully and in detail, testified to what occurred and what was said in the sick room and explained fully the treatment of which complaint was made. When the physician was called to testify, to what he did in treating the plaintiff, it was objected that he was incompetent to do so be-

cause it was privileged. The Supreme Court of Indiana held that the privilege had been waived. The court, in speaking through Mr. Justice Elliott, said:

"If a patient makes public in a court of justice the occurrences of the sick room for the purpose of obtaining a judgment for damages against his physician, he cannot shut out the physician himself, nor any other who was present at the time *covered by the testimony.*" (Italics mine.)

That case is not an authority upon the proposition involved in the case at bar. Of that opinion was also the Supreme Court of Indiana when, in the case of *Indianapolis, etc., Co. v. Hall,* 165 Ind. 557, 76 N. E. 242, which is a much more recent case, it was held that a plaintiff in going on the stand in a personal injury suit and testifying to the nature and extent of his injuries does not thereby waive the privilege, and that his physician may not for that reason be called by the defendant to testify respecting the injuries of the plaintiff. The last case from the Indiana Supreme Court is therefore directly in point here.

The next case cited by Mr. Justice CORFMAN is *Treanor v. Manhattan Ry. Co.,* 16 N. Y. Supp. 536. In that case it is held that the patient waived the privilege in testifying to the nature and extent of his injuries and ailments. The real question that was presented for decision in that case, however, was somewhat different. That question may perhaps be best stated in the language of the judge writing the opinion. He said:

"It is to be borne in mind, too, that here the physician was not called to reveal the ailments of the patient, but to prove that she suffered from no such injuries as she represented."

I submit that that presents a different question from the one presented here.

The last case cited by Mr. Justice CORFMAN is the case of *Epstein v. Penn. R. Co.,* 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 394 Ann. Cas. 1915A, 423. That case in my judgment, is the only case in which it is squarely held that a plaintiff in a personal injury case in testifying to the nature and extent of his injuries thereby waives the privilege and

opens the door, so that the attending physician may be called by his adversary to testify against him respecting the nature, extent, and treatment of such injuries. There were three grounds of waiver claimed in that case. The Supreme Court of Missouri, however, declined to pass upon all of the grounds urged, but based its ruling mainly upon the following statement which I here give in the language of the justice writing the opinion, namely:

"Plaintiff Epstein, in his own testimony in the case, testifying for himself in his examination in chief, voluntarily related, fully and in detail, his consultations with, communications to, and examination and treatment by, his said physician Elston."

The court accordingly held that, in view that the plaintiff had thus testified, he had waived the privilege. The opinion is very long and goes into the question very fully. It is in effect conceded, however, that there is great diversity of opinion respecting the matter. There is a strong dissenting opinion in that case, in which the writer makes plain that the result of the prevailing decision is to do away with the privilege in personal injury cases, and that the statute of Missouri is practically nullified or repealed. The opinion is exhaustive and very interesting, and the temptation to review it at length is great, but to do so would extend this opinion beyond reasonable limits. I shall therefore leave it with what I have said.

There are other cases that are sometimes cited which defendant claims support the conclusion reached by Mr. Justice CORFMAN. It is not necessary, however, for me to review more cases, since nothing new is contained in them or any of them. There are, however, many cases in which it is squarely held that a plaintiff in a personal injury case does not waive the privilege by taking the stand in his own behalf and in merely testifying to the extent and nature of his ailments and to his present physical condition therefrom, so long as he does not disclose anything his physician may have told him or advised him in respect to his injuries, etc. Among other cases in which it is so held are the following: *Indianapolis, etc., Co. v. Hall*, 165 Ind. 557, 76 N. E. 242; *McAllis-*

*ter v. St. Paul, etc., Co.,* 105 Minn. 1, 116 N. W. 917; *Cohodes v. Menomee, etc., Co.,* 149 Wis. 308, 135 N. W. 879; *Green v. Town of Nebagamain,* 113 Wis. 508, 89 N. W. 520; *Noelle v. Hoquiam, etc., Co.,* 47 Wash. 519, 92 Pac. 372; *May v. Northern Pac. Ry. Co.,* 32 Mont. 522, 81 Pac. 328, 70 L. R. A. 111, 4 Ann. Cas. 605. The gist of what is decided in the foregoing cases is perhaps best stated in the fourth headnote to the case of *Cohodes v. Menomee, supra,* where it is said:

"Although plaintiff herself testified concerning her condition and the nature and extent of her injuries, she did not thereby waive her rights under said statute."

It seems to me that but slight reflection is necessary to force the conviction that the conclusion of the Wisconsin court is entirely sound. In what way are the secrets of the sick room revealed, which, after all, is the vital thing covered by the statute, because a plaintiff who has suffered personal injuries through the negligence of another merely discloses the nature and extent of those injuries and his feelings and suffering with regard thereto to the jury? I confess my utter inability to grasp the reasoning by which such a result is reached.

But it is contended that the respondent waived the privilege because he made certain statements of what his physician, Dr. Critchlow, said or told him during the time he was under the doctor's care. The statements specially complained of are set forth in the opinion of Mr. Justice CORFMAN. No one, contends, certainly I do not, that in so far as the respondent made voluntary statements of what Dr. Critchlow told or advised him respecting his injuries, or in so far as he disclosed what occurred in the sick room, the doctor could not have been called and could not have contradicted or explained such statements. To that extent respondent had waived the privilege. That doctrine was clearly announced by this court in *State v. Hoben,* 36 Utah, 186, 102 Pac. 1000, where it is stated by Mr. Justice Straup, at page 198 of 36 Utah, at page 1004 of 102 Pac., in the following words:

"The rule is well settled, that if the client himself testifies to conversations with his attorney in respect to the matters claimed to be privileged, the privilege is waived. Jones, Ev. (2d Ed.) section 756. The client may not thereafter be heard to claim the privilege when the attorney is called to·impeach him."

The same rule applies to patient and physician. The authorities are also to the effect that the mere fact that a patient discloses what occurred at one time or on one occasion or consultation does not authorize the doctor to testify with respect to other occurrences or other consultations or examinations. The privilege is exclusively granted to the patient, and he may waive it in whole or in part as he sees fit. He may, however, not disclose what occurred between him and his physician without waiving the privilege to the extent of such disclosure. In my judgment appellant in this case, however, did not present the question just discussed by anything that is contained in the questions propounded to Dr. Critchlow and to which I have heretofore referred. Neither of those questions was limited to any particular statement or occurrence, and hence the ruling of the trial court cannot now be assailed because it did not permit them, or either of them, to be answered. Had the appellant merely attempted to have the doctor contradict or explain what plaintiff said the doctor told him a different question would be presented.

It is, however, further contended that the privilege was waived for the reason that Dr.· Scott was called as a witness for the respondent, and he testified that just before the trial he made an examination of the condition of respondent's fractured leg and fully explained its condition as he then found it. It must be kept in mind that Dr. Scott did not treat the respondent at any time, nor was he called in consultation by or with Dr. Critchlow. All that Dr. Scott knew about the condition of respondent's fractured leg was what he discovered by the examination referred to. While it is true that the courts hold that, if there are two attending physicians and both of them were present at a particular consultation or examination, then if the plaintiff calls one of them to testify

respecting such consultation or examination the other may also be called by the defendant to testify with respect to the matters testified to by the first one, the mere fact, however, that two physicians may have attended and treated the patient at different times does not authorize either of them to be called by the defendant to testify to consultations or examinations other than those which the plaintiff or one of the physicians testified to. The rule is so well and so clearly stated in 4 Jones Com. Ev. section 761, that I take the liberty of reproducing here what is there said. The author says:

"By virtue of the statute, the patient is alone given the right to remove the ban of secrecy. The patient may be willing to waive the objection of incompetency as to a particular physician in whom he reposes confidence, and yet may be unwilling to waive this objection as to another, who treated him at a different time for the trouble complained of. The statute affords him this privilege, when the testimony of the offered witness does not relate to the same occasion as that from which the patient has removed the seal of secrecy. When this privilege is waived by the patient as to any particular witness, the adversary is entitled to the benefit of the waiver as to such witness, but is not entitled thereby to call another physician who had treated the patient at a different time to testify relative to the matter. But it is generally held not a waiver for a party to testify as to his physical condition or state of health or nature of his injuries."

The authorities in support of the text are cited by Mr. Jones. They are very numerous, and I shall not pause to refer to them. The case of *Morris v. Railway Co.*, 148 N. Y. 88, 42 N. E. 410, 51 Am. St. Rep. 675, is sometimes cited to the contrary. A mere cursory examination of that case will, however, disclose that the decision is in strict harmony with the rule announced by Mr. Jones. It is there held that if the plaintiff calls one of two physicians who were present "at the same examination or consultation, both holding professional relations to him," he also waives the privilege as to the other respecting the matters testified to by the one who is called. The rule is both reasonable and practical.

It is, however, also insisted that the respondent waived something by exhibiting his fractured leg to the jury. I am free to confess my utter inability to see how that could have

affected the rights of the appellant. This court, in *Larson v. Salt Lake City*, 34 Utah, 318, 97 Pac. 483, 3 L. R. A. (N. S.) 462, squarely held that where a plaintiff sues to recover damages for personal injuries, and testifies in court respecting the nature and extent of such injuries, if the exposure is not indecent he may be required by either party to exhibit the affected parts to the jury, and the defendant may then, on cross-examination, fully develop and show the nature and extent of the injury. In this case the appellant could thus have developed the full extent of the injury to the fractured leg both on the cross-examination of the respondent and on that of Dr. Scott. Moreover, Dr. Critchlow was permitted to explain an X-ray photograph of the fractured leg. I cannot see how it would be possible to lay before a jury more fully the condition of the fractured leg than was done in this case.

If it be assumed, however, that the court erred in not permitting Dr. Critchlow to testify to the questions propounded to him, yet, in my judgment, no prejudice resulted to the appellant. In this case the wheels of the freight car passed over plaintiff's leg and of necessity crushed the bones. It certainly requires no expert testimony to explain the effects of crushed bones when crushed under such circumstances. Then again, the leg was exhibited to the jury and its condition at the time of the trial was fully explained to them, if any explanation was necessary. In what way anything that Dr. Critchlow could have said or explained in answering the questions propounded to him would have assisted the jury in determining the quantum of damages I am utterly unable to see. In order to avoid any misunderstanding respecting my contention, it is: (1) That the injured person does not waive the statutory privilege by merely testifying to the nature, extent, and effect of the injury. (2) That he waives the privilege by testifying to what occurred in the sick room between himself and physician or in testifying to statements made or to the advice given by his physician. The waiver in that respect, however, extends only to the particular matters that the injured person has testified to, and does not open

the door so that the physician may testify to either the treatment or what he discovered, etc. (3) That the privilege is not waived by calling another physician to testify at the trial regarding the condition of the injured parts when the physician called obtained his information independently of the one who treated the patient, and when the one testifying was not present with the attending physician at any consultation or examination of the patient.

In view of all that occurred at the trial, I confess my inability to see how the defendant was legally prejudiced by anything that occurred or was omitted at the trial. I am clearly of the opinion therefore, that the judgment should be affirmed.

GIDEON, J.

I concur in the dissenting opinion of the Chief Justice.

On Application for Rehearing.

CORFMAN, THURMAN and McCARTY, J.J.

Counsel for respondent apply for a rehearing on several distinct grounds. The propositions on which they rely are, in substance, as follows:

(1) The questions propounded to Dr. Critchlow did not indicate the materiality of the answers expected, nor was there an offer of what was intended to be proven.

(2) The defendant might have moved to strike out the voluntary statement of plaintiff as to what Dr. Critchlow told him. Not having done so, it is not entitled to be treated as a waiver of privilege.

(3) There is a vial distinction between the terms "waiver" and "consent" in the statutes pertaining to privilege. Where the word "consent" is used it means express consent, and not consent by implication.

(4) Statutes pertaining to privilege should be strictly construed.

(5) The court overlooked an important decision of the United States Supreme Court, binding upon this court and conclusive of the question involved.

(6) The majority opinions are not sustained by the weight of judicial opinion.

(7) The majority opinions are not in harmony with one another, and each is inconsistent with itself.

The foregoing propositions are not stated in the language of counsel, for it is impracticable to do so. They are our conclusions drawn from the argument.

Propositions 1 and 2, above stated, cannot be considered on this application. They are new points entirely, now brought to our attention for the first time notwithstanding they were just as available at the hearing on appeal, and, if relied on, should have been presented at that time. In 4 C. J. 627, 628, the rule is stated thus:

"A rehearing will not be granted on the ground that petitioner has failed to argue an important point on the hearing. All points relied upon in support of the case must be presented by the briefs and arguments on appeal, and the practice of reserving certain points to be argued subsequently, in the event of an adverse decision, is condemned by the courts."

See, also, a recent opinion by this court, *Swanson v. Sims,* 51 Utah, 485, 170 Pac. 774.

If the rule above quoted were strictly applied, proposition 3, relied on by respondent, might also, with propriety, be precluded from consideration; but, as it goes directly to the question on its merits, we are not disposed in this case to apply the rule and will therefore give the proposition brief consideration.

Upon the question as to the distinction between the terms "consent" and "waiver" in statutes relating to privilege, counsel have not furnished us with any authority upon the subject supporting such distinction, nor have we been able to find any. On the contrary, it appears from their own argument that some of the statutes relating to privilege render a witness incompetent to testify in such cases and make no provision whatever for a surrender of the privilege either

by waiver or consent. Notwithstanding this, the courts in those jurisdictions recognize the doctrine of waiver and find it by implication from the conduct of the party. Certainly, if waiver or consent may be implied under statutes which do not expressly provide for either, it ought not to be considered revolutionary to deduce it from a statute like ours which expressly provides for it. We, for convenience, quote again our statute, heretofore quoted in the opinion of Mr. Justice CORFMAN:

"A physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Rev. Stat. Mo. 1909, section 6362, provides as follows:

"The following persons shall be incompetent to testify: * * * Fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

We are unable to comprehend the principle upon which respondent can consistently contend that the Utah statute, which expressly provides for the surrender of the privilege by consent should receive a more strict construction in favor of the privilege than should the statute of Missouri, which, in express terms, renders the testimony of a physician in such cases incompetent without any provision whatever for surrender of the privilege by either waiver or consent. We are of the opinion that an examination of the several statutes of other states, and the decisions of the courts construing them, will disclose no warrant whatever for the distinction relied on by respondent.

Under proposition 4 it is contended that statutes pertaining to privilege should be strictly construed. We believe the statute should receive a reasonable construction. If the construction demanded by respondent were applied to the Missouri statute, which we have quoted, and other

statutes to which we might refer, the testimony of the
physician under these circumstances could not be permitted
at all, even if the patient expressly consented. Yet we find
the courts of that state have held, under such a statute, that
the privilege may be waived by conduct similar to that relied
on by appellant in the present case. *Highfill v. Mo. Pac. R.
Co.*, 93 Mo. App. 219. We do not believe that a statute which
excludes testimony calculated to disclose the truth in the
trial of a case should receive a rigidly strict construction in
favor of the exclusion unless the terms of the statute are
such as to leave no doubt that such was the intention of the
lawmaking body. The statute of Utah provides that the
privilege may be surrendered by consent, and we are of the
opinion that the consent may be implied from the patient's
conduct.

Under proposition 5 it is contended that the majority of
the court, in their opinions, overlooked an important decision
of the United States Supreme Court which is binding upon
this court and conclusive of the question involved. The case
referred to is *Arizona & N. M. R. R. Co. v. Clark*, 235 U. S.
669, 35 Sup. Ct. 210, 59 L. Ed. 415, L. R. A. 1915C, 834.
Without conceding that that case is more binding upon the
court in this particular case than would be a decision of the
Missouri court, or of the court of any sister state, we never-
theless recognize the great ability and high standing of the
United States Supreme Court and regard its opinions as
persuasive in the highest degree. These considerations call
for a respectful notice of the decision referred to. The case
arose in the state of Arizona and involves the construction
of a statute of that state, R. S. Ariz. 1901, section 2535, subd.
6. The statute reads:

"A physician or surgeon cannot be examined, without the
consent of his patient as to any communication made by his
patient with reference to any physical or supposed physical
disease or any knowledge obtained by personal examination
of such patient: Provided, that if a person offer himself as a
witness and voluntarily testify with reference to such com-

munication, that is to be deemed a consent to the examination of such physician.''

From the foregoing it will be seen there are two matters upon which the patient's physician cannot be examined without the patient's consent: First, matters communicated by the patient to the physician with reference to any supposed physical disease of the patient; and, second, knowledge obtained by the physician by personal examination of the patient. To this rule, however, there is a proviso to the effect that, if the patient offer himself as a witness and voluntarily testify with reference to such communication, that is to be deemed a consent to the examination of the physician.

The patient in the case referred to, being a party plaintiff, was sworn on his own behalf and testified generally as to the injuries, but did not testify to any communication he had made to his physician so as to bring the case within the proviso which rendered the physician competent. Just how the appellant in that case, under the plain words of the statute and the testimony of the plaintiff, could assume that the plaintiff, who had not testified to any communication made to his physician, had waived his privilege, is beyond our comprehension. The statute mentions one instance in which the patient's consent may be implied, namely, where he voluntarily testifies with reference to communications to his physician. By construction all others are excluded. Expressio unius, est exclusio alterius. As we read the opinion of the court, this is the principle upon which it decided the case. And notwithstanding the able dissenting opinion of Mr. Justice Hughes, in which one other justice concurs, we have no fault to find with the majority opinion.

Under proposition 6 respondent insists that the majority of the court are not sustained by the weight of judicial opinion. Concerning this proposition but little need be said in addition to what we have said in our former opinions. It is a question upon which different minds may arrive at different conclusions. The fact is demonstrated by the conflicting view of the different courts whose opinions we have cited. Counsel for respondent admit, by inference at least, that some of the courts have gone farther in allowing consent

or waiver to be implied from conduct than have the majority opinions in the present case. From the whole mass of authority considered by us, we have endeavored to ascertain the just and proper rule to be applied to the facts in the case before us. Upon one proposition we are in full accord, and that is conclusive of the main question. We believe that when a patient, who afterwards becomes a party in court, is sworn as a witness in his own behalf and details the treatment applied by his physician and states what his physician says concerning the injury or disease and its probable effects and consequences, he thereby consents to the physician testifying to the same extent that any other witness might testify if sworn in the case. That is exactly the doctrine affirmed in the case of *Highfill v. Mo. Pac. R. Co., supra,* rendered under a statute which did not provide for the surrender of the privilege either by waiver or consent. That case is as nearly in point as one can ordinarily hope to find upon the trial of a legal question. The patient had testified to what his physician did and said concerning his injuries. This was held by the court to be a waiver of his privilege. It was not so held reluctantly by the court, as suggested by respondent's counsel, but it was so held because it was right and in accord with a former decision of the court. . Counsel for respondent evidently read that opinion with distorted vision, or they never could have been so mistaken, as they evidently were, concerning the meaning of the language used by the court.

This requires a brief explanation. After the patient had testified as above stated, the defendant called plaintiff's physician, Dr. Wood, and asked him what was the matter with the plaintiff. The question was objected to by plaintiff and the objection was sustained. On appeal the defendant insisted the physician was competent as a witness and assigned as a reason therefor that it was not shown in the evidence that the witness was plaintiff's physician. The court, in passing upon this question, said:

"We do not think he was a competent witness for the reason assigned, but under a recent decision of this court he was."

In construing this language of the court, counsel say:

"But it is significant that the judge rendering the decision in the Highfill Case stated he *did not believe that Dr. Wood was a competent witness under the statute.*" (Italicized by respondent.)

There is no such language in the opinion, and no such meaning can be drawn from any language used by the court. We do not charge counsel with intentionally misconstruing the meaning of the court. That is inconceivable. But if counsel had carefully read and considered that opinion, instead of distorting its meaning, they would have been compelled to admit that at least one case had been found where the facts are in every respect analogous in principle to the case at bar and in which the majority opinions of this court are upheld and sustained. We have found no case upon a similar state of facts which holds to the contrary.

We are convinced that our position is sustained by the great weight of authority.

Finally, it is contended under proposition 7 that the majority opinions are not in harmony with one another and that each is inconsistent with itself. We cannot take the time nor use the space necessary to examine counsel's views concerning our opinions. We do say, however, their criticism in many respects is unfair and misleading, and we are constrained to believe the several majority opinions must have been read by counsel with the same character of vision as that with which they read the opinion in the Highfill Case, to which we have referred. It is needless to say that, unless counsel in argument will read and consider cases and opinions with a clear vision and earnest desire to arrive at their true meaning as free as possible from partisan bias, they will inevitably arrive at an erroneous conclusion.

After giving respondent's application for a rehearing the most careful consideration of which we are capable, and fully realizing the importance of the question involved, we are still of the opinion that the case should be re- 11, 12 manded for a new trial for the reasons heretofore stated. If there are shades of difference in the reasons

assigned for the reversal of the judgment in the opinions
heretofore handed down, it is sufficient to say, as before
stated, we all agree that where a party voluntarily, in a trial
of his own cause, states what his physician did and said
respecting the injuries which are the subject of litigation, he
should not be permitted to close the mouth of the physician
when offered as a witness by his adversary solely on the
ground of privilege. That is the question here involved, and
the only question intended to be determined by the majority
of the court. It is needless to say, counsel's intimation to
the contrary notwithstanding, that none of the prevailing
opinions hold, or intended to hold, that the waiver of
privilege opens the door for immaterial or irrelevant ques-
tions. The question as to whether or not the plaintiff was
afflicted with syphilis was, in our opinion, wholly immaterial
in this particular case. The plaintiff was in the employment
of defendant as an able-bodied man at the regular wages usual
in such employment. This is substantially admitted in the
pleadings. If he was injured by the negligence of defendant,
and his permanent recovery rendered more precarious and
doubtful by reason of such disease, we know of no authority
or legal principle under which appellant could claim im-
munity either wholly or in part on that account. The ques-
tions were therefore immaterial and were objectionable on
that ground, but not on the ground of privilege for the
reasons heretofore stated.

The application for rehearing is denied.

FRICK, C. J.

I dissent for the reasons stated in my dissenting opinion to
the original opinion and for the further reason that in my
judgment the case of *Arizona & N. M. R. R. Co. v. Clark*, 235
U. S. 669, 35 Sup. Ct. 210, 59 L. Ed. 415, L. R. A. 1915C, 834,
should control this case.

GIDEON, J.

I concur with the Chief Justice.